COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Kelsey and McClanahan
Argued at Alexandria, Virginia


JODI LIN COOPER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2816-04-4              JUDGE ELIZABETH A. McCLANAHAN
                                                       DECEMBER 6, 2005
CRAIG D. EBERT


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Paul F. Sheridan, Judge Designate

Richard E. Crouch (John Crouch; Crouch & Crouch, on briefs), for
appellant.

Michael Kevin Murphy (Law Offices of Michael Kevin Murphy &
Associates, on brief), for appellee.


Jodi Lin Cooper appeals a decision interpreting a child support provision in a separation

agreement with Craig D. Ebert.  Cooper contends that the trial court erred in:  (1) requiring the

parties to enter into a formal, written agreement to modify the amount of child support;

(2) crediting Ebert with non-conforming child support payments; and, (3) imputing income to

Cooper.  For the reasons that follow, we affirm in part, reverse in part, and remand to the trial

court for proceedings consistent with this opinion.

I. BACKGROUND

Cooper and Ebert were married in 1992.  In January 1998, one child was born of the

marriage.  The parties separated in the summer of 1997.  In anticipation of their divorce, they

negotiated and entered into a "Custody, Separation and Property Settlement Agreement" (PSA).

Pertinent to this appeal, that agreement included the following four provisions.  (1) Paragraph 7

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

of the agreement provided that husband would pay $800 in child support to wife, fifty-four percent of work-related child care costs either to wife or directly to the child care provider and $80 toward the nanny's health insurance. (2) Paragraph 8 of the agreement provided that on every May first thereafter, the parties would provide each other with W-2, 1099 and K-1 income tax forms for the preceding year and that on June first for the subsequent two years, and every other year after that, "[c]hild support shall be recalculated and the adjusted child support shall be effective on June 1 and continue until the next review." The parties specified that child support recalculation would be accomplished by using the Virginia Child Support Guidelines. (3) Paragraph 14 contained a provision that if the parties were not able to agree, after a good faith discussion, "upon specific time-sharing arrangement or any other significant matter concerning the education, health, support, health insurance and unreimbursed health care costs or general welfare" of the child that was not specifically provided for in the agreement, the parties would consult with a parenting counselor. If they could still not agree, the parties would then participate in mediation. If mediation did not resolve the dispute, either party could "petition a court of competent jurisdiction to adjudicate the issue, as well as any request for attorney's fees and costs." Finally, (4), paragraph 47 provided that any modification of the terms of the PSA would not be effective unless made in writing and entered into with formality equal to that of the PSA.

During divorce proceedings, the PSA was presented to the trial court for its consideration. The court approved the PSA and, pursuant to Code § 20-109.1, incorporated the PSA into the decree. The decree stated, "IT FURTHER APPEARING that the parties entered into a Property Settlement Agreement dated July 7, 1998, which is fair and equitable and resolves all issues relating to their marriage so that there are no issues remaining for the Court to determine." Ebert complied with the child support provisions of paragraphs 7 and 8, including

unilaterally recalculating and paying increased child support payments, until May 1, 2001, which approximately coincided with Cooper's discharge of the child's nanny and his entry into preschool. At that time, Ebert, unilaterally without agreement, greatly reduced the amount of his child support payments. On May 1, 2002, the parties were again to exchange income information in accordance with paragraph 8 of the PSA. The parties failed to cooperate with each other, causing Cooper to file a petition for a rule to show cause in November 2002, which she amended in December 2002. No action was taken on Cooper's pleadings. In January 2003, Ebert filed a petition for child custody. Cooper responded by filing a motion to determine child support amounts. The child custody issue was resolved in a written agreement, resulting in Ebert taking physical custody of the child on March 1, 2004, which was later incorporated in a consent order. The issue of child support and enforcement was heard in September 2004.

After hearing the evidence, the trial court ruled that the parties were required to enter into a formal, written agreement to modify the amount of child support in compliance with paragraph 47, but that the parties "did not accomplish any such modification." The court also found that no court entered any order concerning child support after the final decree was entered.

The court also reviewed exhibits presented by the parties on the monthly amounts owed and paid regarding child support and associated maintenance costs. Cooper argued that Ebert overpaid his child support in some months, and underpaid it in other months. Cooper argued that in the months that Ebert paid more than $800, the overpayment must be considered a gift and that payments made to others in support of the child could not be considered in the child support amount Ebert owed to Cooper. The trial court disagreed, stating:

> On the total commitment to the child that these parties contracted
> to have, he paid at least what he owed under their contract, both
> through the $800 a month and with the supplemental figure for
> child care and other related services.

So he is not, by this trier of fact, held to have voluntarily or by gift paid more than $800 a month. It's all explained by the Property Settlement Agreement and what they understood they were doing, and putting what they understood they were doing in terms of what they wrote in the contract. So he has paid her more than he owes her in child support.

In the court's written order it stated, "Ebert has satisfied his obligations under the PSA/final decree to pay child support to Cooper."

The court also ruled that Cooper was to pay Ebert child support, commencing on March 1, 2004, a date agreed to in writing by Cooper, since Ebert had taken physical custody of the child on that date. Ebert argued that income should be imputed to Cooper because she was voluntarily underemployed. After hearing testimony from a vocational rehabilitation specialist, and taking into account the deposition testimony of Cooper, the trial court asked Cooper's counsel to argue the issue of imputed income and to provide the court with "a fair number" to impute to Cooper. Cooper's counsel offered that $3,500 per month should be imputed. After some discussion, the court decided to impute $60,000 per year to Cooper.

The court entered an order on November 3, 2004, after which Cooper filed a motion for reconsideration, which the court did not grant. This appeal followed.

II. ANALYSIS

A. Recalculation of Child Support

Cooper contends that paragraph 8 of the parties' PSA dictates an automatic recalculation and adjustment of child support, pursuant to the Virginia statutory child support guidelines, on specific dates after exchange of the parties' financial information. She also argues that the trial court should have enforced Ebert's unilateral recalculation and upward adjustment of his child support payments in compliance with paragraph 8, even if done without agreement by Cooper.

Ebert argues that paragraph 8 meant that the parties were to "join together and recalculate child support at certain milestones." He claims that because the parties never reached

- 4 -

an agreement within the meaning of paragraph 47 of the PSA, requiring any modification to be executed in writing, the court cannot now retroactively modify the child support amount. He also notes that if Cooper was unsatisfied as to the amount of child support she was receiving, or the information she was receiving with regard to Ebert's income, she was required under the PSA, paragraph 14, to pursue alternative dispute resolution. There was no evidence presented to the trial court that the parties had ever attempted to resolve the child support issue through that process.[1] The trial court agreed with Ebert that the parties were required to come to a written agreement before any modification could be made with regard to the child support amount. It also noted that no court entered any order concerning child support for the parties' child after the final decree was entered.

In Riggins v. O'Brien, 263 Va. 444, 559 S.E.2d 673 (2002), the Supreme Court held that "any modification of child support is a matter that rests exclusively with a divorce court and that a court may modify only future support payments." Id. at 447, 559 S.E.2d at 675. Riggins held

> The responsibility of a divorce court to review child support amounts is necessary to ensure that the child's welfare is adequately addressed and protected given the circumstances of the parents. With the exception of terminating a non-unitary support award upon achieving majority, specifying future changes in the amount of child support is inappropriate because it does not allow the divorce court to determine child support based on contemporary circumstances.

263 Va. at 448, 559 S.E.2d at 675. Thus, at the time the parties entered into the PSA, a subsequent court decree was required for modification of child support. See Gallagher v. Gallagher, 35 Va. App. 470, 475-76, 546 S.E.2d 222, 224-25 (2001); Wilderman v. Wilderman, 25 Va. App.

---

[1] Given our holding, we need not address whether the parties were required to seek alternative dispute resolution under paragraph 14 of the PSA before petitioning the court to adjudicate the issue, or whether the trial court erred in holding that paragraph 47 of the PSA required any such modification to be executed with the formality equal to the execution of the PSA itself.

500, 506, 489 S.E.2d 701, 705 (1997).[2]  Even if the parties had been able to agree to recalculate and adjust their child support payments, any such modification had to be presented to a trial court for its approval, which was never done.  Court approval was necessary for any modification of child support, and therefore, the child support amount, $800 per month, as set by the parties in the PSA and approved by the court, remained unchanged.[3]

Further, even if the parties now agreed that the PSA called for recalculation and adjustment, the court is not authorized to retroactively modify a support order.  Code § 20-108; see also Gallagher, 35 Va. App. at 475-76, 546 S.E.2d at 224.  Thus, Ebert was required to pay Cooper $800 in child support, monthly, from the first day of the month subsequent to their signing the PSA (August 1, 1998), until the parties transferred the physical custody of the child to Ebert (March 1, 2004), which was agreed in writing and incorporated into a consent order.[4]

### B.  Child Support Payments by Ebert

Cooper contends that the trial court erred by crediting Ebert with non-conforming child support payments.  In its ruling, the trial court stated, "On the total commitment to the child that

---

[2] On July 1, 2003, the General Assembly amended Code § 20-109.1 to allow future modification provisions in PSAs without a subsequent court decree.  The statute reads in pertinent part:  "Provisions in such agreements for the modification of child support shall be valid and enforceable.  Unless otherwise provided for in such agreement or decree incorporating such agreement, such future modifications shall not require a subsequent court decree."  Code § 20-109.1.

[3] Cooper contends that Riggins is distinguishable because the PSA in that case attempted to specify future amounts, rather than calling for a recalculation in accordance with the guideline statute, as contemplated here.  We reject that contention.  The phrase "future changes" in Riggins, 263 Va. at 448, 559 S.E.2d at 675, does not require such a narrow reading.  Any modification of the child support amount, specified or unspecified, would be a "change" under Riggins, and would require approval by the court.

[4] Cooper concedes that she agreed to the transfer of child support liability on March 1, 2004, which is not contested by either party and is supported by our holding in Acree v. Acree, 2 Va. App. 151, 157, 342 S.E.2d 68, 71 (1986); see also Gallagher, 35 Va. App. at 476, 546 S.E.2d at 225.

these parties contracted to have, he paid at least what he owed under their contract, both through the $800 a month and with the supplemental figure for child care and other related services."

The court erred in crediting Ebert with third-party payments. A payor spouse is not entitled to receive credit for payments to third parties that might otherwise constitute non-conforming child support payments. Gallagher, 35 Va. App. at 479, 546 S.E.2d at 226 (citing Wilderman, 25 Va. App. at 509-10, 489 S.E.2d at 705). Thus, any payments Ebert made to outside parties for "child care and other related services" cannot be considered as a credit toward the $800 support payment obligation.

With regard to credit for overpayments against underpayments, Cooper argues that under Virginia law, each accrual of a child support payment becomes a judgment, that payee parents have a right to the periodicity of constant child support amounts, regularly paid, and that they have a right to strict compliance with the agreement and decree terms which set forth a regular monthly amount. Both parties' exhibits showed that there were months that Ebert paid more than $800 to Cooper and months he paid less than $800 to Cooper, with variations as high as $2,344 (including third-party payments), and as low as $273. All of the overpayments were made from August 1998 through May 2001, and all of the underpayments were made from June 2001 to March 2004. Cooper contends that the overpayments are gifts, which cannot be counted against extended months of underpayments of the support obligation. We agree.

"Under settled principles, child support payments required under a valid court order become vested as they accrue . . . ." Gallagher, 35 Va. App. at 475-76, 546 S.E.2d at 224. "Generally, the terms of a support decree must be strictly complied with and payments made when due to the designated payee in accordance with the terms of the decree." Id. at 476, 546 S.E.2d at 224-25. There are limited situations in which a court may credit a payor spouse for non-conforming child support payments; "[t]ypically, two conditions must exist before credits

- 7 -

will be given for non-conforming payments: (1) an agreement by the parties which modifies the terms or method of payment; and (2) no adverse affect on the support award." Wilderman, 25 Va. App. at 506, 489 S.E.2d at 705. Thus, a court has discretion to credit non-conforming payments if they "substantially satisf[y] the purpose and function of the support award and . . . do[] not vary [in effect] the support award." Id. In this case, however, there was no agreement by the parties to modify the terms or method of payment, and the court credited Ebert with overpayments made to Cooper during the first three years against excessive underpayments made during the last three years.

The trial court abused its discretion in crediting Ebert's overpayments against his underpayments. A spouse ordered to pay support "must pay 'according to the terms of the decree . . .' [and] payments [made in excess of the amount ordered are] gifts or gratuities and cannot be credited to his obligation to pay the support award." Johnson v. Johnson, 1 Va. App. 330, 333, 338 S.E.2d 353, 355 (1986) (citations omitted); see Sanford v. Sanford, 19 Va. App. 241, 246, 450 S.E.2d 185, 188 (1994) (citing Newton v. Newton, 202 Va. 515, 519, 118 S.E.2d 656, 659 (1961)). While an overpayment might properly be applied against an occasional underpayment, or for payments made directly to the recipient instead of through the Division of Child Support Enforcement, as was the case in Wilderman, 25 Va. App. at 505, 489 S.E.2d at 704, it is an abuse of discretion to allow credit for old and longstanding overpayments against more current and sustained underpayments that have, in effect, modified the support order. Here, Ebert did not occasionally miss a payment or pay the arrearage directly to the recipient instead of through another party; he unilaterally modified the support order by reducing his payments from the required $800 per month payment to approximately $475 per month for thirteen consecutive months, and then to approximately $273 for twenty consecutive months. Such a modification is not permissible absent court approval, and Ebert should not be credited for paying his child

support obligation under these terms. Moreover, even if the court were permitted to credit the overpayments against the underpayments, no matter how the calculation is attempted, Ebert's payments (not including third-party payments) do not meet what he owed Cooper in child support from August 1998 to March 2004. We remand to the trial court to determine the amount of Ebert's arrearage without taking into account third-party payments or payments in excess of $800 per month in child support.

### C. Imputation of Income to Cooper

Cooper argues that the trial court abused its discretion in imputing income to her for the purposes of her child support obligation, because the trial court found that she was not voluntarily unemployed or underemployed. "Imputation of income is within the trial [court]'s discretion . . . ." Sargent v. Sargent, 20 Va. App. 694, 704, 460 S.E.2d 596, 601 (1995). "Imputation of income is based on the principle that a spouse should not be allowed to choose a low paying position that penalizes the other spouse . . . ." Calvert v. Calvert, 18 Va. App. 781, 784-85, 447 S.E.2d 875, 876-77 (1994) (citations omitted).

> Whether a person is voluntarily unemployed or underemployed is a factual determination. In evaluating a request to impute income, the trial court must "consider the [parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children."

Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (citation omitted).

In this case, however, Cooper conceded that the trial court could impute income to her. During closing arguments, the trial court asked Cooper's counsel to argue the issue of imputed income and to provide the court with "a fair number" to impute to Cooper. Cooper's counsel offered that $3,500 per month should be imputed. Thus, Cooper "will not be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with [her] representations." Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000).

- 9 -

The trial court imputed $60,000 per year ($5,000 per month) to Cooper. Unless the fact finder acted unreasonably, we consider it our duty not to "substitute our judgment for that of the trier of fact, even were our opinion to differ." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (citation omitted). Because imputation is within the trial court's discretion, we cannot say that it erred in setting that figure.

Finally, Ebert asks this Court for an award of attorney's fees incurred in connection with this appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon a review of the record, we find the litigation addressed appropriate and substantial issues and that Cooper did not generate unnecessary delay or expense in pursuit of her interests. Therefore, the request is denied.

### III. CONCLUSION

Accordingly, we hold that in order to modify the child support amount established by the PSA, which was incorporated into the divorce decree, the parties were required to seek court approval, which they failed to do. Thus, the $800 per month child support amount continued in force until March 1, 2004. The trial court abused its discretion in crediting Ebert with non-conforming child support payments. We remand to the trial court for recalculation of the arrearage amount, and appropriate judgment proceedings, including the calculation of interest. We also hold that the trial court did not abuse its discretion in imputing $60,000 per year income to Cooper. Ebert's request for attorney's fees on appeal is denied. Therefore, we affirm in part, reverse in part, and remand to the trial court for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.