COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Bray and Annunziata
Argued at Alexandria, Virginia


ABBAS ASGARI

v.   Record No. 2533-99-4

GISO ASGARI                                    OPINION BY
                                          JUDGE RICHARD S. BRAY
GISO ASGARI                                  SEPTEMBER 5, 2000

v.   Record No. 2560-99-4

ABBAS ASGARI


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Marcus D. Williams, Judge

          David L. Duff for Abbas Asgari.

          Joyce M. Henry-Schargorodski (Gaughan &
          Schargorodski, on briefs), for Giso Asgari.


     Abbas Asgari (husband) and Giso Asgari (wife) were divorced

by decree of the trial court entered October 1, 1999.  In

adjudicating the cause, the court classified the former marital

home of the parties and husband's "disability retirement" as

marital property, apportioned certain marital debt, awarded

husband retroactive child support from wife, and denied his

claim to spousal support.  On appeal, husband complains the

court erroneously (1) "fail[ed] to recognize [his] separate

property component in . . . the marital home"; (2) awarded wife

a percentage of his "disability pay"; (3) failed to allocate

responsibility for a marital debt incurred by him; and (4) denied spousal support. Wife challenges retroactivity of the child support award. Finding no error, we affirm the decree.

The parties were married August 26, 1984, and separated on July 20, 1997. Prior to the separation, husband filed a bill of complaint with the trial court, seeking, inter alia, divorce, temporary and permanent custody of the child born to the marriage, child and spousal support from wife, and a determination of the respective property interests pursuant to Code § 20-107.3. Wife's responsive pleadings sought similar relief. The court thereafter conducted several protracted hearings, resulting in a voluminous record that embraced an array of issues, much of which is irrelevant to our determination of this appeal.

At the time of marriage, both husband and wife were gainfully employed and financially independent. Wife had earned a B.A. degree and husband a B.S. in civil engineering and masters degrees in Social Planning and City Planning. Wife then resided in a local apartment complex and husband occupied a home in Arlington, acquired by him before the marriage. At the inception of the marriage, the couple relocated to an apartment in Crystal City, and husband rented his former residence to others. Within a short time, however, they returned to

husband's Arlington residence and together undertook extensive repairs and renovations.[1]

Intending to purchase a marital home with wife, husband sold his Arlington residence in 1986, depositing $66,000 from the net proceeds into the parties' joint checking account. On March 24, 1987, husband and wife contracted to purchase a new home, which required a $5,000 "down payment" and an additional $41,709.55 at closing, on July 24, 1987, all of which was drawn from the joint account. The evidence does not disclose deposits or withdrawals or continuing balances with respect to such account for the period preceding settlement on the new residence. However, "paychecks," expenditures, "everything," attributable to both parties were routinely deposited into and withdrawn from the joint account both before and after receipt of the proceeds from the sale of husband's residence into the account.

During these years of marriage, the parties successfully pursued respective employment opportunities, each contributing both economically and otherwise to the marital partnership. On April 17, 1989, a son, Armun Jonathan Asgari, was born to the union, and the couple shared the attendant responsibilities,

---

[1] Wife described husband's home as "totally destroyed," a "shack," and detailed her extensive personal efforts rehabilitating the property.

while maintaining employment, until husband was seriously injured in an automobile accident on January 5, 1993.

Following the accident, which occurred while husband was acting in the course of employment as an engineer with the Virginia Department of Transportation (VDOT), husband claimed permanent total disability and pursued both workers' compensation benefits and disability retirement from VDOT and an independent tort claim for "pain and suffering, medical expenses and lost wages."  Husband was "immediately" awarded biweekly workers' compensation benefits of $941.14, a sum equaling 66.66% of his VDOT salary, for 500 weeks, in addition to the payment of all accident-related medical expenses.  Later, on April 11, 1994, the Virginia Retirement System (VRS) approved husband's "application for disability retirement," resulting in an initial "Basic Benefit" of $2,084 per month, subject to a temporary offset for the workers' compensation award.  The tort claim, settled for $300,000, provided $136,000 net to husband, after satisfaction of attendant obligations, fees and expenses, including a workers' compensation lien of $68,095.72.

VRS documentation relating to husband's disability claim specifically referenced the "Retirement Benefit" as "Line of Duty Disability Retirement," based upon weighted "Service:  17 years 10 months" and a computation "us[ing] salaries earned in the 60 months . . . prior to . . . retirement date," "Effective:

7/1/94" at an age of "43 years 3 months."[2]  Husband was further advised of his entitlement "to receive a refund of accumulated contributions and interest in the [VRS]," $14,085.

The effects of the accident brought immediate and lasting changes to the household.  Husband, no longer employed, assumed a significantly greater responsibility for child rearing, while wife, then age thirty-three and in good health, maintained employment as a jewelry consultant with Neiman Marcus. Understandably, wife's responsibilities "got a lot more" as she alone assumed numerous tasks about the household, including "grocery shopping," "laundry," transportation needs and financial management, in addition to caring for husband. Despite husband's continuing disability benefits and wife's average annual income of approximately $76,462.89, the family incurred substantial credit card and consumer debt, which totaled approximately $70,000 at the time of the hearing, exclusive of a $25,000 balance on a personal loan to husband from another.

Husband testified that he remained totally disabled at the time of the hearing, a circumstance corroborated by successive annual reviews by VRS and the testimony of his treating physician, Dr. Howard Hite.  Husband insisted he "can't work" as

---

[2] The VRS monthly benefit, $2,084, was a function of the "average of [husband's] highest 36 consecutive months of salary," $36,498.71, computed in accordance with Code § 51.1-157.

a result of intermittent severe pain and related physical limitations, including an inability to sit, stand or lift within normal limits, and the need for a multitude of prescription medications. However, wife's evidence established that husband often engaged in physical activities, including basketball, hunting, swimming, tennis and extended travel, both overseas and domestic. She recalled husband admitted that he had "no pain," no need for medication, and was "faking" disability to retain benefits. Much of wife's testimony was corroborated by independent witnesses and other evidence.

At the hearing below, each party presented extensive economic evidence reflecting their respective needs and resources. Husband's monthly disability and workers' compensation benefits then aggregated $2,256, while his regular expenses for a like period totaled approximately $7,000, including a $2,038 mortgage payment on the marital home and an assortment of increased costs attributable to the child, then in his care. Similarly, wife reported a $4,421 monthly income shortfall, despite net earnings of $5,193. Noteworthy expenses reportedly incurred each month by wife included $1,800 for "Furniture/Furnishings," $1,257 "Legal Expenses," and $1,154 on "Charge Account Debt" of $88,346.

Immediately upon the conclusion of the evidentiary hearings, the trial court decided the substantial issues, save the determination of child support, orally announcing seriatim

the rulings, with no objections then noted by either party.[3]

Subsequent motions, apparently later argued before the trial

court, focused on the retroactivity of the child support award.

The final decree, entered several months following the last

evidentiary hearing, determined a host of questions, including

the limited issues pertinent to the instant appeal.

## RETROACTIVE CHILD SUPPORT

The trial court awarded husband $664 per month child

support from wife, "retroactive to October 1, 1997 . . . the

date [he] filed [a] pendente lite petition for child support,"

reciting simply that the child "lives with the father," without

otherwise addressing custody.  Wife, thereafter, objected to the

retroactivity of the award by motion filed with the court,

contending, in pertinent part, that husband withdrew his claim

for child support prior to the evidentiary hearings.  No

transcripts of hearings relative to wife's motion are a part of

the record before this Court.  Later, above her endorsement to

the final decree, wife again excepted to "the court's ruling of

retroactive child support and the retroactive date the court

chose."  On appeal, she argues that the retroactivity ruling was

error, "where procedurally the motion for child support had been

---

[3] The final decree expressly "incorporated by reference" the
"numerous findings . . . reflected in the transcript of the
Court's ruling."

withdrawn,"[4] adding, for the first time, "and where [husband's] financial resources were vastly different in 1997 and 1998 than at the date of trial."

In support of her contention that husband withdrew his prayer for retroactive child support, wife asserts that continuances or "removals" of two hearings scheduled on husband's motion for pendente lite relief constituted an abandonment of the claim. Wife further complains, citing no authority, that husband's failure to pursue a hearing resulted in an inequitable "creat[ion] of an arrearage beyond [her] control," "not the intended use for retroactive [child] support." Her arguments are belied by the record and contrary to statute.

Code § 20-108.1(B) provides that "[l]iability for [child] support shall be determined retroactively . . . from the date that the proceeding was commenced by the filing of an action with the court." Here, husband commenced an action for child support at the inception of the instant cause, praying for such relief in the bill of complaint. Husband's subsequent motion for a pendente lite award, together with related scheduling

---

[4] The record does not indicate that wife objected to the amount of the award at any time before the trial court.

events, did nothing to displace the underlying claim.  Thus, an award of retroactive support clearly complied with statute.[5]

## EQUITABLE DISTRIBUTION

In adjudicating the numerous property interests of the parties pursuant to Code § 20-107.3, the court declared husband's disability retirement and the jointly titled residence to be marital property[6] and did not apportion a debt of husband to another, allegedly incurred to reduce marital debt.  Husband first argues that the VRS disability benefit was an award intended "to make an injured employee 'whole,'" distinguishable from the "extra" benefit of retirement "earned as a result of longevity."  Husband does not dispute the "propriety" of the instant award, if the subject benefit constitutes "'retirement benefits'" contemplated by statute.

Code § 20-107.3(G) empowers the court to

> direct payment of a percentage of the
> marital share of <u>any</u> pension . . . or
> retirement benefits, whether vested or
> nonvested, which constitutes marital
> property and whether payable in a lump sum
> or over a period of time. . . .  "Marital
> share" means that portion of the total
> interest, the right to which was earned

---

[5] To the benefit of wife, the court awarded retroactive support from the date husband moved for <u>pendente</u> <u>lite</u> relief, not the commencement of the suit.  Husband, however, assigned no error to the ruling.

[6] The decree awarded wife "40% of the gross or total pension benefits as such is received" by husband and ordered the marital home sold, with the "net proceeds" equally divided between the parties.

          during the marriage and before the last
          separation of the parties . . . .

(Emphasis added); see Code § 20-107.3(A)(3)(b).  In enacting

Code § 20-107.3(A)(3)(b) and companion Code § 20-107.3(G), the

legislature clearly "intended all pensions . . . to be personal

property and subject to equitable distribution."  Sawyer v.

Sawyer, 1 Va. App. 75, 78, 335 S.E.2d 277, 280 (1985).  "A

pension, by definition, is 'a retirement benefit paid regularly,

with the amount of such based generally on length of employment

and amount of wages or salary of pensioner.  It is deferred

compensation for services rendered.'"  Banagan v. Banagan, 17

Va. App. 321, 324, 437 S.E.2d 229, 230-31 (1993) (citation

omitted).  Clearly, the "all inclusive language of . . .

§ 20-107.3(G) permitting the court to direct payment of a

percentage of the marital share of 'any pension'" does not

suggest the exclusion of "disability pensions"[7] from the

statutory scheme.  Peter N. Swisher et al, Virginia Family Law

§ 11-17, at 451 (2nd ed. 1997) (emphasis added).

     Here, the record establishes that husband's disability

award constituted a VRS retirement benefit contemplated by the

statutory VRS plan, which expressly permitted "[a]ny member

. . . [to] retire for disability" upon specified terms and

---

     [7] In sharp contrast to Code § 20-107.3(G), veterans'
disability benefits are expressly exempted from division in
equitable distribution by federal law.  See Lambert v. Lambert,
10 Va. App. 623, 627, 395 S.E.2d 207, 209 (1990) (citation
omitted).

conditions.  Code § 51.1-156.  Accordingly, all related documentation referenced the benefit as a "Retirement Benefit," "Disability Retirement," or like characterization, including a designated "retirement date."  The resulting benefit received by husband, a function of his employment service, average wages and age, was earned and accrued during the marriage.  Thus, governed by the clear statutory scheme and particulars of the subject award to husband, the court correctly distributed the benefit as a "pension" or "retirement benefit" within the intendment of Code § 20-107.3(G).

Husband next complains that the trial court, in declaring the jointly titled home of the parties marital property, ignored the $46,709.55 contribution of his separate property to the acquisition costs.  Husband argues that the deposit of $66,000 derived from the sale of his former home, clearly separate property, into the parties' joint checking account, later withdrawn to partially fund purchase of the new residence, adequately traced such separate funds into the property.  However, husband's argument is without sufficient support in the record.

Code § 20-107.3(A)(3) recognizes the concept of "property . . . part marital and part separate," hybrid property.  See Rahbaran v. Rahbaran, 26 Va. App. 195, 205, 494 S.E.2d 135, 140 (1997).  The statute "presupposes that separate property has not been segregated but, rather, combined with marital property."

Id. at 207, 494 S.E.2d at 141.  When such interests are commingled through the contribution of one to another,

> resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution.  However, to the extent the contributed property is retraceable by a preponderance of the evidence . . ., such contributed property shall retain its original classification.

Code § 20-107.3(A)(3)(d).

"In order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset."  Rahbaran, 26 Va. App. at 208, 494 S.E.2d at 141 (emphasis added).  "Whether a transmuted asset can be traced back to a separate property interest is determined by the circumstances of each case" and "the trial court's award . . . will not be reversed 'unless it appears from the record that the chancellor . . . abused his discretion, . . . has not considered or has misapplied [a] statutory mandate[], or . . . the evidence fails to support the findings of fact . . . .'"  von Raab v. von Raab, 26 Va. App. 239, 248, 246, 494 S.E.2d 156, 160, 159 (1997) (citation omitted).

Here, assuming, without deciding, husband deposited his separate funds into a joint checking account with wife, commingling separate and marital assets, unspecified sums of marital funds were thereafter deposited and withdrawn from the

account, the balance regularly ebbing and flowing for months. Thus, when the parties withdrew from the account those monies necessary to acquire the marital home, the identity of husband's separate funds had been lost in countless unspecified transactions involving marital funds, resulting in the irreversible transmutation of separate into marital property. Under such circumstances, the court was unable to properly trace and preserve the integrity of husband's separate property.

In husband's final challenge to the trial court's decree of equitable distribution, he assails the court's failure to allocate, pursuant to Code § 20-107.3(C), "a $25,000 loan incurred by [him] to pay marital credit card debts." Husband testified that he "borrowed $50,000 cash from [a] Mr. Jahander," interest free, received as "cash in a bag." Husband contends that such loan, dating from "late – 1996," was applied to marital debt and "paid down to approximately $25,000 by the time of trial." However, husband's counsel advised the court, during the evidentiary hearing, that he was "not asking for any of the Jahander loans back." Husband will not be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with his representations. See Manns v. Commonwealth, 13 Va. App. 677, 679-90, 414 S.E.2d 613, 615 (1992).

SPOUSAL SUPPORT

Lastly, husband contends the trial court erroneously denied him spousal support from wife.[8]  Husband maintains that physical and emotional disabilities render him unable to secure gainful employment, causing severe economic hardship, including a reduced standard of living and significant indebtedness.  In contrast, he points to wife's gainful employment and good health, with consistent and substantial earnings in recent years.  Husband, therefore, asserts that the evidence demonstrates his compelling "need," together with wife's ability to pay.

"The determination whether a spouse is entitled to support, and if so how much, is a matter within the discretion of the court and will not be disturbed on appeal unless it is clear that some injustice has been done."  Dukelow v. Dukelow, 2 Va. App. 21, 27, 341 S.E.2d 208, 211 (1986) (citations omitted).  However, the trial court's discretion must not be exercised without reference to Code § 20-107.1, which "commands that, in order to exercise its discretion, '[t]he court shall . . . consider' the specific factors contained therein.  Failure to do so is reversible error."  Bristow v. Bristow, 221 Va. 1, 3, 267 S.E.2d 89, 90 (1980) (citation omitted).  In reviewing the disputed decision, "[w]e assume that the [court] followed the

_____

[8] In denying present support, the court reserved such relief to husband.

statutory mandate," and the trial judge need not assign a weight to each among the several factors, provided related evidence is before the court.  McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 161 (1985).

Without undertaking to again recite the abundance of evidence relevant to the requisite statutory considerations, we find sufficient support in the record for the court's decision and, clearly, no abuse of discretion.

Accordingly, we affirm the decree.

Affirmed.