COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Benton and McClanahan
Argued at Alexandria, Virginia


ANGELA A. NAVAS

                                                    OPINION BY
v.        Record No. 2947-03-4        CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                   JULY 20, 2004
SEGUNDO NAVAS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Arthur B. Vieregg, Jr., Judge

Karen Leiser (Leiser & Associates, PLLC, on brief), for appellant.

James R. Tate (Kathryn D. Bigus; Tate & Bywater, Ltd., on brief),
for appellee.


Angela Navas (wife) appeals the denial of her motion for entry of a Qualified Domestic

Relations Order (QDRO) pursuant to Code § 20-107.3. The sole issue raised on appeal is whether

the trial court erred in refusing to enter the proposed QDRO as being inconsistent with the final

decree of divorce. We hold that the trial court erred in denying wife's request for entry of the

QDRO. Thus we reverse.

I. BACKGROUND

The facts are undisputed. The parties were married August 30, 1972, and a final decree

of divorce was entered May 10, 2000. It provided that wife "is awarded fifty percent of the

marital share of [husband's] interest in the WMATA [Washington Metropolitan Area Transit

Authority] pension if, when and as received by him from WMATA." Effective January 29,

2001, husband was permanently disqualified from his position at WMATA due to an eye injury.

WMATA approved a "disability allowance" of $1,728 on January 18, 2002 "in accordance with

the . . . Retirement Plan." Husband did not pay wife any share of this allowance. On April 25,

2002, wife requested a QDRO that she alleged in her pleadings had been pre-approved by the WMATA on March 27, 2002. The trial court requested that wife make specified changes to this QDRO, which she did. On July 1, 2002, the trial court entered this amended QDRO, which was endorsed by both parties, but it was later rejected by the WMATA pension plan administrator because it used language other than that approved by the plan.[1] Wife filed a second Motion for Entry of a QDRO on August 8, 2003. In her accompanying memorandum, she argued that husband's disability allowance was part of his "WMATA pension" described in the final decree of divorce and that she was entitled to receive her marital share of this allowance. By letter opinion, the trial court denied wife's motion for entry of this QDRO, ruling that husband's "disability as distinguished from his pension is not authorized by the Final Decree of Divorce." Wife appeals from this ruling. On September 11, 2003 the trial court also denied wife's Motion for Reconsideration and to Stay the Ruling.

## II. ANALYSIS

In pertinent part, Code § 20-107.3(G)(1) provides that "[t]he court may direct payment of a percentage of the marital share of any pension . . . or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time." Because the meaning of "any pension . . . or retirement benefits" is a question

---

[1] The plan requested that:

> Total and Permanent Disability Allowance. In the event that the Participant receives a Total and Permanent Disability Allowance under Section 8(c) of the Plan, the Alternate Payee shall be entitled to a monthly payment in the portion defined in Paragraph 5 above, beginning when the Participant begins to receive the Disability Allowance and ending when Disability Allowance payments from the Plan to the Participant cease, and shall be subject to all the conditions of the Disability Allowance in the Plan.

of law involving the construction of Code § 20-107.3, we review the trial court's judgment *de novo*. See Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003); Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998) ("Although the trial court's findings of historical fact are binding on appeal unless plainly wrong, we review the trial court's statutory interpretations and legal conclusions *de novo*.").

On appeal, wife contends that the language in the final decree of divorce awarding her one half the marital share of husband's "WMATA pension" also encompasses husband's payments from the WMATA "Total and Permanent Disability Allowance" and that she is entitled to the same share of this allowance. In her memorandum submitted with the motion for the entry of the QDRO, wife contended that husband's "Total and Permanent Disability Allowance" is one of three types of awards provided by the "WMATA pension." She argued that because "[t]here are multiple ways for an employee, who is vested in The WMATA Plan, . . . [to] draw an 'allowance' from The WMATA Plan," either by normal retirement, early retirement, or disability, the language of the final decree should be construed to include husband's disability allowance. We hold that husband's "Total and Permanent Disability Allowance" is part of the "pension" contemplated by the final decree. By the express terms of the WMATA Plan the disability allowance supplants any other retirement allowance, and is calculated in the same way as the normal retirement allowance. Thus, the trial court erred in denying wife her share of the disability allowance.

The trial court has limited authority to modify a final decree of divorce pursuant to Code § 20-107.3(K), which provides, in pertinent part:

> The court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to:
>
> Modify any order . . . intended to affect or divide *any pension*, profit-sharing or deferred compensation plan or retirement benefits

pursuant to the United States Internal Revenue Code or other applicable federal laws, only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

(Emphasis added).

Additionally, a "QDRO may not modify a final divorce decree simply to adjust its terms in light of the parties' changed circumstances but must be consistent with the substantive provisions of the original decree." Hastie v. Hastie, 29 Va. App. 776, 780, 514 S.E.2d 800, 803 (1999) (internal citations and quotations omitted).

Applying this standard, we must decide whether the QDRO effectuates the intent of, and is consistent with, the final decree. Specifically, we must decide whether the words "WMATA pension" in the final decree apply to the provision of husband's WMATA "Retirement Trust Agreement and Plan" that is denoted "Total and Permanent Disability Allowance." We addressed the issue of whether a disability allowance could effectively be a pension in Asgari v. Asgari, 33 Va. App. 393, 533 S.E.2d 643 (2000). In that case, the husband contested an award of his Virginia Retirement System (VRS) disability benefits to wife at divorce, arguing that they were "distinguishable from the 'extra' benefit of retirement 'earned as a result of longevity.'" We stated:

> A pension, by definition, is a retirement benefit paid regularly, with the amount of such based generally on the length of employment and amount of wages or salary of pensioner. It is deferred compensation for services rendered. Clearly, the "all inclusive language of . . . Code § 20-107.3(G) permitting the court to direct payment of a percentage of the marital share of 'any pension'" does not suggest the exclusion of "disability pensions" from the statutory scheme.

Id. at 401, 533 S.E.2d at 647 (quoting Peter N. Swisher et al., Virginia Family Law § 11-17, at 451 (2d ed. 1997)).

- 4 -

We further reasoned that the VRS plan contemplated the disability benefit as a retirement benefit because it was computed as a function of husband's employment service, and was earned and accrued during the marriage. We held that "the court correctly distributed the benefit as a 'pension.'" Id. at 402, 533 S.E.2d at 648; see also Knies v. Knies, 979 P.2d 482, 486 (Wash. Ct. App. 1999) (holding that husband's disability payments were effectively a retirement benefit and subject to division in accordance with the original decree); Newsom v. Petrilli, 919 S.W.2d 481, 484 (Tex. App. 1996) (holding that disability benefits earned during marriage were "pension and retirement benefits" and subject to division); Simmons v. Simmons, 568 S.W.2d 169, 170 (Tex. Civ. App. 1978) (holding that husband's disability benefits were a function of his compensation during marriage and thus properly divisible).

Applying these principles to the instant case, we hold that the WMATA disability allowance is a retirement benefit, and contemplated by the language "WMATA pension" in the final decree of divorce. The WMATA "Transit Employees' Retirement Trust Agreement and Plan" is a pension plan providing "retirement income and disability payments for eligible employees of Washington Metropolitan Area Transit Authority." Section 8 of the Plan designates three different types of "allowances" that the Plan provides for employees: a "Normal Retirement Allowance," an "Early Retirement Allowance," and a "Total and Permanent Disability Allowance," with eligibility based on the circumstances surrounding retirement. The Plan specifies eligibility for the disability allowance as follows:

> Any employee under this Plan who shall become totally and permanently disabled by reason of an accident or sickness before becoming eligible for benefits in accordance with Subsection (a) hereof . . . shall be entitled to receive a disability allowance."

The WMATA approved husband for the "Total and Permanent Disability Allowance" on January 18, 2002 following a disabling eye injury which permanently terminated his employment. In effect, husband's disability allowance was a replacement for the normal

retirement allowance he would have received had he not been injured. Under the Plan guidelines, employees are entitled to receive only one type of allowance under the WMATA pension:

> No employee shall be entitled to a disability allowance at the same time that the employee receives either a normal retirement allowance under Subsection (a) or an early retirement allowance under Subsection (b).

Similar to the VRS plan in Asgari, the WMATA Plan provides that "the amount of the disability allowance shall be computed in the same manner as provided above for the normal retirement allowance," based on the number of employee's years of service and wages earned. Like the other allowances provided under the Plan, husband's disability allowance was earned and accrued during the marriage. Awarding wife one half of the marital share of husband's disability allowance is consistent with, and effectuates the intent of the final decree award from husband's "WMATA pension." We therefore hold that the trial court erred in denying wife's motion for entry of the QDRO.

Accordingly, we reverse the judgment of the trial court, and order that the QDRO be entered consistent with this opinion.

Reversed and remanded.