COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Decker and AtLee
Argued at Richmond, Virginia

WILLIAM TERRELLE HENDERSON

MEMORANDUM OPINION* BY
v.        Record No. 1364-17-2          JUDGE MARLA GRAFF DECKER
MAY 15, 2018

BRIGITTA HENDERSON

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellant.

James M. Goff, II (James M. Goff II, P.C., on brief), for appellee.

William Terrelle Henderson (the husband) appeals a final order of the circuit court resolving

equitable distribution and support issues in the course of his divorce from Brigitta Henderson (the

wife).[1]  He contends that the equitable distribution award was flawed based on the court's improper

treatment of various assets and debts.  The husband also challenges the child and spousal support

awards, suggesting that the court erroneously calculated the parties' incomes.  Finally, he contends

that the court abused its discretion in awarding attorney's fees and costs to the wife.  For the reasons

that follow, we affirm the circuit court's decision in part, reverse in part, and remand for further

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The wife also noted an appeal to this Court from the final order.  See Brigitta Henderson
v. William Terrelle Henderson, No. 1402-17-2 (Va. Ct. App. Aug. 31, 2017).  These two cases
were joined for purposes of oral argument, but the Court resolves the appeals in separate,
simultaneously issued opinions.

proceedings consistent with this opinion.[2] Additionally, we deny the parties' respective requests for attorney's fees and costs incurred on appeal.

## I. BACKGROUND

The parties were married in 1999. They had two children, who were born in 2002 and 2006. The husband was a professional athlete before and during the marriage but retired shortly after their second child was born in 2006. The couple accumulated substantial assets, as well as some debts, before separating in 2014.

The wife filed a bill of complaint seeking a divorce, child and spousal support, equitable distribution, and attorney's fees and costs. Following two evidentiary hearings, the court entered a final decree granting the divorce, distributing the marital property, and awarding child and spousal support. The court also ordered the husband to pay the attorney's fees and costs incurred by the wife in the circuit court.

## II. ANALYSIS

This appeal addresses certain aspects of the circuit court's equitable distribution, child and spousal support awards, and attorney's fees and costs award. Additionally, each party seeks an award of attorney's fees and costs incurred as a result of this appeal.

### A. Equitable Distribution

The husband challenges the court's classification of two investment accounts as marital, as well as the valuation of one of those accounts. He also contends that the court improperly classified

---

[2] The record was sealed by the circuit court pursuant to Code § 20-124. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by the husband. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1, 805 S.E.2d 775, 777 n.1 (2017).

as marital property the "line-of-duty" benefits he received based on his work as a professional athlete.

Code § 20-107.3 requires the circuit court, at the request of divorcing parties, to classify property owned by the parties separately or jointly as separate, marital, or part separate and part marital for purposes of equitable distribution. It further requires the court to value the property and distribute the value of property that it classifies as marital. Code § 20-107.3; see Stumbo v. Stumbo, 20 Va. App. 685, 692-93, 460 S.E.2d 591, 595 (1995).

On appellate review, a circuit court's equitable distribution award "will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" Wiencko v. Takayama, 62 Va. App. 217, 229-30, 745 S.E.2d 168, 174 (2013) (quoting McIlwain v. McIlwain, 52 Va. App. 644, 661, 666 S.E.2d 538, 547 (2008)). "It is well established that [the circuit court as] the trier of fact ascertains a witness' credibility, determines the weight to be given to [his or her] testimony, and has discretion to accept or reject any of the witness' testimony." Layman v. Layman, 62 Va. App. 134, 137, 742 S.E.2d 890, 891 (2013) (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*)).

1. Investment Accounts

The husband disputes the court's rejection of his evidence purporting to trace the funds in two Wells Fargo accounts to his separate property. He also contests the court's failure to deduct the amount of a lien as part of the process of valuing one of the accounts.

a. <u>Classification and Tracing</u>[3]

We first address the classification of the accounts for purposes of equitable distribution. The circuit court must classify property as separate or marital, or part separate and part marital, before valuing and dividing it in equitable distribution. <u>See</u> Code § 20-107.3(A).

Settled principles provide that all property "acquired by each party during the marriage which is not separate property as defined [in subdivision (A)(1) of Code § 20-107.3]" is presumed marital. Code § 20-107.3(A)(2)(iii). Subdivision (A)(1) defines separate property to include "all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property." Code § 20-107.3(A)(1)(iii). Once the presumption that property acquired during the marriage is marital property comes into play, "[t]he party claiming that property should be classified as separate has the burden to produce satisfactory evidence to rebut this presumption." <u>Joynes v. Payne</u>, 36 Va. App. 401, 428, 551 S.E.2d 10, 23 (2001) (quoting <u>Stroop v. Stroop</u>, 10 Va. App. 611, 615, 394 S.E.2d 861, 863 (1990)). A party's ability to do so may rest on the credibility of his evidence. <u>See</u> <u>Anderson v. Anderson</u>, 29 Va. App. 673, 685-87, 514 S.E.2d 369, 375-76 (1999). Classification of property, including whether a party has successfully proved that property presumed to be marital "was acquired 'for or from the proceeds of the sale of separate property,'" is a question of fact and will not be reversed unless "plainly wrong or without evidence to support it." <u>See</u> <u>Ranney v. Ranney</u>, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005) (quoting Code § 20-107.3(A)(1)).

The dispute involves whether the funds in Wells Fargo accounts #5889 and #7913, titled only in the husband's name, were marital or separate property for purposes of equitable distribution. The accounts came into existence in 2004, significantly after the parties married in

---

[3] This section of the opinion addresses assignments of error 1 through 4.

1999.  Consequently, the accounts are presumed to be marital.  See McIlwain, 52 Va. App. at 656-58, 666 S.E.2d at 544-45; Lambert v. Lambert, 6 Va. App. 94, 99, 367 S.E.2d 184, 187 (1988).  The husband claims that the accounts were funded with sums that were his separate property and remained his separate property.  Accordingly, he bore the burden of tracing those funds to his wholly separate property, with evidence found credible by the trier of fact.  See Anderson, 29 Va. App. at 685-87, 514 S.E.2d at 375-76.

The husband's evidence was that he had a separate premarital brokerage account, First Union/Wachovia account #0410.  He claimed that this account, even after the marriage, contained only his separate funds earned prior to the marriage.  He also testified and offered evidence from various bank employees that this account was the source of all of the funds that he deposited into Wells Fargo accounts #5889 and #7913.  However, it is undisputed that the husband was unable to produce any records for the First Union/Wachovia account #0410 for the years 2001 to 2004.  The stipulated testimony of a Wells Fargo employee confirmed the unavailability of these records.  In the absence of these records, the circuit court held that the husband had not borne his burden of proving that the funds in accounts #5889 and #7913 were his separate funds.  The court, as the finder of fact, concluded that the husband's testimony about the source of the funds in First Union/Wachovia account #0410 provided insufficient evidence to meet his burden of tracing the funds to his separate property.[4]  See Anderson, 29 Va. App. at 685-87, 514 S.E.2d at 375-76 (where the husband presented only a single account statement when tracing funds over a nine-year period, holding that the trier of fact was "entitled to give no

_____

[4] The circuit court described the missing records as "a three[-]year black hole from 2001 to 2004" and said it could not conclude that the husband presented adequate evidence tracing the funds to his separate property "without . . . engaging in guesswork or speculation."  The court also noted that it "received no evidence as to the formation of [account #0410] or the source of the initial deposits" and "ha[d] only [the husband's] testimony that the account consisted of his pre-marital salary and bonuses."

weight to [the] husband's testimony that the funds . . . were maintained as separate property, particularly in the absence of documentary evidence").  Counsel for the husband conceded at the evidentiary hearing that "*[y]es, it comes down to [the husband's] credibility*," but counsel argued that "the math works."  (Emphasis added).  The mere fact that the husband was able to prove that he had pre-1999 earnings and bonuses in an amount sufficient to fund account #0410, the amount he claims to have traced, was insufficient to meet his burden of proof.  See Lee v. Lee, 13 Va. App. 118, 121-22, 408 S.E.2d 769, 770-71 (1991) (holding that the circuit court did not err in classifying a certificate of deposit purchased in the husband's name during the marriage as marital property because no evidence supported his claim that he purchased it with separate property in the form of his disability payments).

Consequently, the record supports the circuit court's classification of Wells Fargo accounts #5889 and #7913 as marital.

### b.  Debt and Valuation[5]

We next turn to the circuit court's classification of the lien on Wells Fargo account #5889 and the impact of that classification on its valuation of the account.

The parties stipulated to the account balance and the amount of the lien against it, which was in the form of a secured equity line.  The husband's financial consultant at Wells Fargo testified that the note securing the lien was in the husband's name.

The circuit court addressed the outstanding equity line balance separately from its valuation and distribution of the account.  It valued the account in accordance with the parties' stipulation concerning the account balance, without considering the amount of the lien, and ordered the account divided equally, awarding each party half the value of the balance. Although it accepted the parties' stipulation regarding the amount of the secured debt and

---

[5] This section of the opinion addresses assignments of error 5, 7, 8, and 9.

classified the debt as marital, the court found that the parties had presented insufficient evidence to permit it to determine whether the secured debt was jointly owned. It held under Code § 20-107.3(C) that in the absence of such evidence, it lacked the authority to divide the debt. The court then stated that it would reach the same result even if it applied the presumption in Code § 20-107.3(A)(2) that marital property is jointly owned because it would exercise its discretion not to divide the debt.

The appellate court must reverse an equitable distribution award if it finds a "misapplication or wrongful application of the equitable distribution statute.'" Wiencko, 62 Va. App. at 229-30, 745 S.E.2d at 174 (quoting McIlwain, 52 Va. App. at 661, 666 S.E.2d at 547). Code § 20-107.3 requires a court effecting an equitable distribution to proceed in an orderly fashion: Specifically, it must (1) "classify the property," (2) "assign a value" to the property, and (3) "distribute the property to the parties, taking into consideration the factors listed in Code § 20-107.3(E)." Theismann v. Theismann, 22 Va. App. 557, 564, 471 S.E.2d 809, 812, adopted upon reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). Code § 20-107.3(E) requires the circuit court, when distributing the marital property during the final phase of the process, to consider the "debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities." Code § 20-107.3(E)(7). "However, to the extent that a valid indebtedness which is *secured* creates an encumbrance on the legal title" of marital property, we have held that this "indebtedness *must* be considered" by the circuit court at an earlier stage in the process, when "determining the *value* of the marital property." Trivett v. Trivett, 7 Va. App. 148, 151, 371 S.E.2d 560, 562 (1988) (emphases added).

Applying these principles, we hold that the circuit court, before distributing Wells Fargo account #5889, had to value the account properly by deducting the lien on the account—the

- 7 -

secured debt owed on the equity line. Consequently, we reverse and remand to the circuit court to correctly calculate the value of the account before dividing it. On remand, the court should once again apply the subsection (E) factors to determine the distribution of the account. See generally Gamer v. Gamer, 16 Va. App. 335, 344, 429 S.E.2d 618, 624-25 (1993) ("Each marital asset is not necessarily entitled to be treated the same for purposes of equitable distribution. The [circuit court] may determine, depending upon how the factors in Code § 20-107.3(E) are applied, that certain marital assets should be divided and treated differently than others."), quoted with approval in Judd v. Judd, 53 Va. App. 578, 592, 673 S.E.2d 913, 919 (2009).

Based on our ruling that the court was required to deduct the amount of the secured debt in determining the value of the property, we need not address the appellant's argument in his seventh assignment of error that the court misperceived the range of its authority regarding division of the debt under Code § 20-107.3(C).

## 2. Line-of-Duty Disability Benefits

The husband challenges the circuit court's classification of benefit payments that he received called line-of-duty (LOD) payments. He received the LOD payments based on his former employment as a professional athlete. The parties agree regarding the amount of Wells Fargo account #5608 that comprises the LOD payments at issue.

The record contains a copy of the detailed official summary of the "Player Retirement Plan." The included cover letter states that the retirement plan provides eligible employees with "pension and disability benefits," as well as "survivor protection for [employees'] wives and famil[ies]." The plan covers retirement benefits and disability benefits, and it defines disability benefits to include both "total and permanent disability benefits" and "line-of-duty disability benefits." The plan's vesting requirements, which are based primarily on an employee's receipt

of credits for being under contract for a certain number of seasons, cover all categories of benefits.[6]

The "monthly retirement benefit" is calculated based on (1) the number of the employee's benefit credits for credited seasons, (2) age upon beginning to receive benefits, and (3) the form chosen for those benefits. The plan lists the normal retirement age as fifty-five but also permits early retirement and deferred retirement under certain circumstances.

Additionally, an employee who is not already receiving ordinary retirement benefits may elect to receive disability benefits under the plan if he can prove either "permanent disability" that is "total" or a lesser degree of permanent disability involving "substantial disablement," as defined in the plan. Permanent benefits for total disability may be paid for the duration of an employee's life. An employee who meets the lesser standard of "substantial disablement" is eligible to receive LOD disability benefits, which are payable for up to ninety months. Finally, a vested former employee who collects disability benefits remains entitled to "all other (non-disability) Retirement Plan benefits" in addition to the disability benefits, "although [an employee] cannot receive both a retirement benefit and a disability benefit for the same period of time."[7]

The husband's LOD payments were deposited directly into one of his accounts. The statement that he received each month to document the deposit, titled "Retirement Pl[an]" and "Direct Deposit Summary," specifically referenced the sum as "Pension."

_____

[6] An employee also becomes vested if he qualifies for total and permanent disability payments. Finally, additional "special [vesting] rules" permit other employees to qualify for regular retirement benefits but not disability retirement. These rules are not applicable in this case.

[7] The husband testified regarding how the LOD disability benefits and more traditional retirement benefits function under the plan. The circuit court, as the finder of fact, was not required to give any weight to his testimony, particularly in light of the presence of the plan summary booklet in the record. See, e.g., Layman, 62 Va. App. at 137, 742 S.E.2d at 891.

- 9 -

Code § 20-107.3(G)(1), in relevant part, relates to the division of the marital share of "*any* pension . . . or retirement benefits." Code § 20-107.3(G)(1) (emphasis added). It classifies as marital all such benefits the right to which is earned during the marriage. See id. The husband argues that the payments should instead be treated like a personal injury award under Code § 20-107.3(H). Subsection (H), which addresses the treatment of both personal injury and workers' compensation awards, classifies as marital *only* the portion of the award attributable to wages lost and medical expenses unreimbursed during the marriage. The husband asserts that his LOD payments are not compensation for lost wages or unreimbursed medical expenses but, rather, cover his pain and suffering for work-related injuries. Consequently, he contends that the benefits were wholly separate property and that the circuit court erred in classifying them as marital.

Classification of property is generally a question of fact and will not be reversed unless "plainly wrong or without evidence to support it." See Ranney, 45 Va. App. at 31-32, 608 S.E.2d at 492. However, the appellate court reviews the circuit court's "statutory interpretations and legal conclusions *de novo*." Craig v. Craig, 59 Va. App. 527, 539, 721 S.E.2d 24, 29 (2012) (quoting Navas v. Navas, 43 Va. App. 484, 487, 599 S.E.2d 479, 480 (2004)). Manifestly, "the meaning of 'any pension . . . or retirement benefits'" in Code § 20-107.3(G)(1) and what payments are encompassed within the statute's terms is "a question of law" reviewed *de novo*. Navas, 43 Va. App. at 487, 599 S.E.2d at 480 (alteration in original). These same principles apply to the scope of subsection (H). See id.

The circuit court ruled that the LOD payments are a retirement benefit subject to distribution under Code § 20-107.3(G). In light of the statutory language as interpreted by this Court in Asgari v. Asgari, 33 Va. App. 393, 533 S.E.2d 643 (2000), and Navas, 43 Va. App. 484,

- 10 -

599 S.E.2d 479, we agree with the circuit court and hold that the husband's LOD disability payments are "pension . . . or retirement benefits" under Code § 20-107.3(G)(1).

In Asgari, the husband was injured while working for a state agency and received disability retirement benefits from the Virginia Retirement System (VRS). 33 Va. App. at 397, 533 S.E.2d at 645. Documentation from the VRS "specifically referenced" the benefits as "'Line of Duty Disability Retirement' [that was] based upon" his years of service and salaries earned. Id. The circuit court ruled that the husband's disability retirement was marital property, and the husband appealed. Id. at 400-01, 533 S.E.2d at 647.

On appeal, this Court reviewed the language of Code § 20-107.3(G)(1) and emphasized the legislature's "clear[] 'inten[t] [that] *all pensions*'" be subject to equitable distribution pursuant to the statute. Id. at 401, 533 S.E.2d at 647 (emphasis added) (quoting Sawyer v. Sawyer, 1 Va. App. 75, 78, 335 S.E.2d 277, 280 (1985)). It highlighted the definition of a pension as "a retirement benefit paid regularly, with the amount of such based generally on length of employment and amount of wages or salary of [the] pensioner" and further described as "deferred compensation for services rendered." Id. (quoting Banagan v. Banagan, 17 Va. App. 321, 324, 437 S.E.2d 229, 230-31 (1993)). It reasoned that the "'all inclusive language'" of subsection (G)(1) "does not suggest the exclusion of 'disability pensions.'" Navas, 43 Va. App. at 488, 599 S.E.2d at 481 (quoting Asgari, 33 Va. App. at 401, 533 S.E.2d at 647). The Court emphasized that the VRS benefit was "a function of [the husband's] employment service, average wages and age." Asgari, 33 Va. App. at 402, 533 S.E.2d at 648. Finally, it recognized that all documentation related to the benefit referenced it as "Retirement," "Disability Retirement," or the "like" and "includ[ed] a designated 'retirement date.'" Id. at 402, 533 S.E.2d at 647-48. That the husband also had to prove an injury qualifying as a disability did not change

- 11 -

the classification of the LOD payments as "a 'pension' or 'retirement benefit'" under Code § 20-107.3(G).  See id. at 401-02, 533 S.E.2d at 647-48.

The Court subsequently applied Asgari in Navas and again held that the wife was entitled to a marital share of her husband's disability retirement.  43 Va. App. at 488-89, 599 S.E.2d at 481-82.  It noted that the divorce decree's award to the wife of a portion of the marital share of the husband's pension encompassed all three ways the retirement plan set out for a vested employee to receive benefits, including disability.  Id. at 487, 599 S.E.2d at 480.  The Court further observed that the disability allowance was available under the plan to any employee who suffered a qualifying disability "before becoming eligible for [regular retirement] benefits."  Id. at 489, 599 S.E.2d at 481.  Finally, it noted that the benefit was "calculated in the same way as the normal retirement allowance" and "replace[d]" the benefit that the husband would later have qualified to "receive[] had he not been injured."  Id. at 487, 489-90, 599 S.E.2d at 480-81.

The holdings in Asgari and Navas control the outcome in the instant case.[8]  Here, like in Navas, the retirement plan's terms set out multiple ways in which the husband was entitled to receive benefits under the plan, including through regular retirement and disability.  See Navas, 43 Va. App. at 487, 489-90, 599 S.E.2d at 480-81.  The husband's eligibility for the LOD benefits, like the more traditional retirement benefits available under the plan, was based in part

---

[8] At the time Asgari and Navas were decided, in 2000 and 2004 respectively, Code § 20-107.3(G) and (H) were both in existence.  See 1990 Va. Acts ch. 636 (reflecting subsection (G) and the addition of subsection (H)).  The statute has been amended seven times since this Court decided Asgari, yet the General Assembly has not modified it to negate the effect of Asgari or provide that line-of-duty disability benefits should be classified as a personal injury or workers' compensation award under (H) rather than as a "pension . . . or retirement benefits" under (G).  See 2004 Va. Acts chs. 654, 757; 2006 Va. Acts ch. 260; 2010 Va. Acts ch. 506; 2011 Va. Acts ch. 655; 2012 Va. Acts ch. 144; 2016 Va. Acts ch. 559; 2017 Va. Acts ch. 797; see also Weathers v. Commonwealth, 262 Va. 803, 805, 553 S.E.2d 729, 730 (2001) ("When the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and if the legislature intends to countermand such appellate decision it must do so explicitly.").

on credited seasons of service to his employer, and the method for calculating the amount of the LOD benefits was similar to the method used for calculating retirement benefits under the plan, just as in Asgari and Navas. See Navas, 43 Va. App. at 489-90, 599 S.E.2d at 481-82; Asgari, 33 Va. App. at 401-02, 533 S.E.2d at 647-48. Further, the retirement plan did not permit the husband to receive both traditional retirement and LOD disability benefits for the same period of time. This fact supports the inference that the LOD benefits functioned like traditional retirement benefits in terms of their wage replacement purpose. See Navas, 43 Va. App. at 490, 599 S.E.2d at 481-82. Additionally, like in Asgari, the benefits at issue were characterized as line-of-duty disability payments, and the account statement that the husband received each month to document the direct deposit of the benefits into his account specifically referenced the sum as "Pension," a category of benefits expressly covered by Code § 20-107.3(G)(1). See Asgari, 33 Va. App. at 402, 533 S.E.2d at 647-48 (examining the "characterization" of the benefits in the relevant documents).

The requirement that the husband prove a qualifying injury did not change the classification of the LOD disability benefits as pension or retirement benefits under subsection (G). See Navas, 43 Va. App. at 489-90, 599 S.E.2d at 481-82; Asgari, 33 Va. App. at 401-02, 533 S.E.2d at 647-48. Finally, the fact that the benefits were available for only a finite period of ninety months, after which the husband would be eligible to receive "regular" retirement benefits

under the plan, does not change the nature of the benefits.[9] Cf. Navas, 43 Va. App. at 490, 599 S.E.2d at 482 (noting the plan provision preventing an employee from receiving a disability allowance "at the same time" as normal or early retirement under the plan).

Consequently, we hold that the circuit court did not err in classifying the husband's LOD disability benefits as marital property subject to equitable distribution.

### B. Child and Spousal Support

With regard to the awards of child and spousal support, the husband asserts that the circuit court erroneously calculated both parties' incomes because it failed to account for the impact of the equitable distribution award. Specifically, he argues that the court should have adjusted his income downward and the wife's income upward based upon the court's award to her of 50% of two Wells Fargo accounts, #5889 and #7913, in the equitable distribution ruling.

Virginia's statutory scheme requires that the spouses' respective incomes must be calculated before a court may determine how much child and spousal support is owed and to whom. See Code § 20-107.1(E)(1), -108.2(B)-(C). The relevant statutes also require the circuit court to consider, either directly or indirectly, the "provisions made with regard to the marital

---

[9] On this record, contrary to the husband's suggestion, we need not consider persuasive authority from other jurisdictions because Virginia's statutory scheme and existing case law resolve the issue. In any event, the holding in Wright v. Wright, 730 S.E.2d 218 (N.C. Ct. App. 2012), cited by the husband, is distinguishable. In deciding Johnson v. Johnson, 450 S.E.2d 923, 925-26 (N.C. Ct. App. 1994), subsequently relied upon in Wright, 730 S.E.2d at 220, the North Carolina Court of Appeals recognized a split of authority and "agree[d] with . . . states" classifying any portion of disability benefits that "compensate for disability" as separate property. This Court, by contrast, rejected a similar argument in Asgari and adopted a unitary approach to classifying disability retirement benefits. 33 Va. App. at 401-02, 533 S.E.2d at 647-48. We are bound by Asgari, not Johnson or Wright.

property under § 20-107.3" in effecting an equitable distribution of the marital estate.[10] Code § 20-107.1(E)(8) (relating to spousal support); see Code § 20-108.2(C) (providing that "gross income" for purposes of calculating child support "means all income from all sources," including dividends, interest, and capital gains); see also Code § 20-108.1(B)(12) (permitting a court to deviate from the presumptive calculation under the child support guidelines where property received by a parent in equitable distribution "earns income or has an income-earning potential"). Accordingly, our ruling reversing the equitable distribution award and remanding for additional proceedings requires that the circuit court, on remand, also revisit the awards of child and spousal support. See Robinson v. Robinson, 46 Va. App. 652, 671, 621 S.E.2d 147, 156-57 (2005) (*en banc*).

### C. Attorney's Fees and Costs in the Circuit Court

The husband suggests that the circuit court errors he raises on appeal, as well as the other issues that were resolved against the wife in that court, require the conclusion that the court "abused its discretion in awarding [the wife] every single penny of her attorney's fees and costs." He further claims that the court's fee award was based on the "rationale that the fees were all a result [of his] adulterous conduct" and that this rationale is not supported by the record.

If a divorce matter does not involve a property settlement agreement that "contain[s] a provision governing a fee dispute, '[a]n award of attorney's fees and costs "is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case."'" Jones v. Gates, 68 Va. App. 100, 105, 803 S.E.2d 361, 364 (2017) (quoting Mayer v.

---

[10] The evidence indicates that in 2015, prior to the court's order of division, the Wells Fargo accounts produced more than half of the income reflected on the husband's income and expense statement. The record also appears to reflect that the court calculated the husband's income for purposes of child and spousal support without adjusting the figures on that exhibit. It further appears that the court used an income figure for the wife that included only the employment income that it imputed to her.

Corso-Mayer, 62 Va. App. 713, 731, 753 S.E.2d 263, 272 (2014)). "Such decision 'is reviewable on appeal only for an abuse of discretion.'" Id. (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)). As with any other issue, this Court must defer to any findings of fact underpinning the circuit court's award of fees and costs. See C.S. v. Va. Beach Dep't of Soc. Servs., 41 Va. App. 557, 566, 586 S.E.2d 884, 888 (2003); see also Green v. Va. State Bar ex rel. Seventh Dist. Comm., 274 Va. 775, 789, 652 S.E.2d 118, 125 (2007) (stating that "factual findings [are] given 'substantial weight' under [an] abuse of discretion standard" (quoting Blue v. Seventh Dis. Comm., 220 Va. 1056, 1061-62, 265 S.E.2d 753, 756-57 (1980))).

The record, so viewed, supports the circuit court's award of fees and costs and does not support the husband's claim that the court found that the basis for all the fees and costs was "a result [of the husband's] adulterous conduct." Rather, the court relied on the husband's adultery only indirectly, in a manner that did not constitute an abuse of discretion.

The court noted first the fact that the husband had both "vastly more income" than the wife and vastly more earning potential. This finding is supported by the record, which indicates that the husband has a college degree and continues to earn appearance fees based on his former career as a professional athlete. The wife, by contrast, never finished college, worked at relatively low-wage jobs, and did so for only a small portion of the marriage.

The circuit court also found that the wife had little knowledge about the family's finances during the marriage and, consequently, had to "incur many expenses in order to prepare and argue for her equitable share." The court further found that the husband's "adulterous conduct," which the evidence established occurred repeatedly throughout the marriage, "destroyed [the wife's] trust in him." Finally, the court found that the wife's questioning of the husband's "forthrightness" regarding finances in the divorce litigation was "the logical, reasonable, and

understandable reaction to [his] adulterous conduct" and that "the [in]escapable consequence of such conduct [was] incurring attorney's fees."

The court's rationale for awarding fees and costs and its underlying findings of fact indicate that the award did not stem from the adultery itself and was not an abuse of discretion.

### D. Attorney's Fees and Costs on Appeal

Each party seeks an award of attorney's fees and costs on appeal. Pursuant to Rule 5A:30, in specified cases in which attorney's fees are recoverable under Title 20 of the Code of Virginia, the Court of Appeals "may award" some or all of the fees requested or "remand the issue to the circuit court . . . for a determination thereof." Rule 5A:30(b)(1), (2). Whether to award fees is discretionary. See id.; Harper v. Va. Dep't of Tax'n, 250 Va. 184, 194, 462 S.E.2d 892, 898 (1995). In determining whether to make such an award, the Court may consider factors including whether the requesting party has prevailed, whether the appeal was "fairly debatable" or frivolous, whether either party "generated unnecessary delay or expense" in pursuing his or her interests, and whether other reasons exist to support an award of attorney's fees and costs. See Rule 5A:30(b)(3), (4); Brandau v. Brandau, 52 Va. App. 632, 642, 666 S.E.2d 532, 538 (2008); Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004); O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). In addition, Rule 5A:30(b)(3) specifically directs this Court to "consider all the equities of the case."

Considering all the factors set out in Rule 5A:30 and the applicable case law, we see no reason that either the husband or the wife should be required to pay the other party's attorney's fees and costs in this case. Accordingly, in the exercise of our discretion, we decline to make an award of attorney's fees and costs to either party. See, e.g., Wright v. Wright, 61 Va. App. 432, 470, 737 S.E.2d 519, 537-38 (2013).

III. CONCLUSION

In sum, we affirm the circuit court's classification of Wells Fargo accounts #5889 and #7913 as marital, including its finding that the husband failed to trace the funds in the accounts to his separate property. We also affirm the court's conclusion that the husband's LOD disability benefits constituted fully divisible pension or retirement benefits rather than a personal injury award with a separate component. We hold that the court erred by failing to subtract the lien on Wells Fargo account #5889 in order to value the account before distributing it between the parties. Consequently, we reverse on this aspect of the equitable distribution ruling and remand for a redetermination of valuation and division. Additionally, because the circuit court must correct its equitable distribution award, it must also consider on remand any necessary adjustments to its child and spousal support awards in light of the adjustment in the equitable distribution. Regarding the circuit court's award to the wife of her attorney's fees and costs in that court, the circuit court's findings of fact, which are not plainly wrong, establish that it did not abuse its discretion by making that award. Finally, we deny the parties' requests for attorney's fees and costs in this appeal.

Affirmed in part and reversed and remanded in part.