COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, McClanahan and Senior Judge Coleman


SANDRA PARKER

                                          MEMORANDUM OPINION*
v.    Record No. 0301-03-3                    PER CURIAM
                                           AUGUST 26, 2003
LYNCHBURG DIVISION OF SOCIAL SERVICES


        FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                J. Leyburn Mosby, Jr., Judge

        (Herbert E. Taylor, III; Herbert E. Taylor,
        III, P.C., on brief), for appellant.

        (Eleanor A. Putnam Dunn, Assistant City
        Attorney; Gary M. Coates, Guardian ad litem
        for the minor child; Fralin, Feinman,
        Coates & Kinnier, P.C., on brief), for
        appellee.


    Sandra Parker (mother) appeals the decision of the trial

court awarding custody of her child, Zefrin, to Phil Eyster,

Zefrin's biological father (father).  On appeal, mother contends:

(1) there was insufficient evidence to support a finding of

abuse and neglect; (2) the trial court erred in awarding custody

of Zefrin to father; and (3) the trial court erred in approving

the foster care plan.  Upon reviewing the record and briefs of

the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial

court.  See Rule 5A:27.

_____
        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Procedural Background

On November 17, 2000, the juvenile and domestic relations district court (juvenile court) entered an emergency order removing Zefrin from mother's custody and awarding temporary custody to LDSS pending a determination as to whether Zefrin is an abused and/or neglected child.

On November 28, 2000, father petitioned the juvenile court for custody, alleging that Zefrin "is a child whose custody requires determination between the parties pursuant to Code § 16.1-241(A)(3)."

After several hearings, the juvenile court entered an order on October 30, 2001, determining that Zefrin should be classified as an abused and/or neglected child and ordering that temporary custody shall remain with father.[1]

By order entered December 13, 2001, the juvenile court found "it is in the best interests of the child that his custody be awarded to his father, Phil L. Eyster."  The juvenile court limited mother's visitation to written communications.

Mother appealed the order to the circuit court, which conducted a trial de novo on September 11-12, 2002.  By order entered on January 7, 2003, the circuit court:  (1) dismissed a

---

[1] Following a May 1, 2001 evaluation of father's home, the juvenile court awarded him temporary custody of Zefrin by order dated July 9, 2001.  Father lives in eastern Tennessee with his other son and current wife.

CHINS petition[2]; (2) found that Zefrin was physically and mentally abused by mother and his removal from mother's home was appropriate; (3) approved the foster care plan filed by LDSS; and (4) awarded custody to father. The trial court awarded mother monthly visitation "under the terms and conditions agreed to between the parents and the child's and mother's counselors."

### September 2002 Evidentiary Hearings

On appeal, this Court is required to view the evidence in the light most favorable to the prevailing party below, here LDSS, granting it all reasonable inferences fairly deducible therefrom. Logan v. Fairfax County Dept. of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citing Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

On October 17, 2000, Amy Witt, a Child Protective Services (CPS) worker for LDSS, received a complaint regarding Zefrin alleging lack of supervision, inadequate food, and physical and mental abuse. On three occasions, Witt hand-delivered letters to mother's residence requesting that mother contact LDSS, but mother never responded. On November 17, 2000, Witt met with Zefrin and his sister, Zondra, who confirmed the allegations of

---

[2] On October 10, 2000, Winston Clark, Jr. filed a petition on behalf of the Lynchburg School District alleging that Zefrin was a child in need of supervision (CHINS) because he was subject to compulsory attendance but was habitually absent from school without justification.

Both the juvenile court and the trial court dismissed the CHINS petition.

physical abuse.  Witt petitioned for Zefrin's immediate removal from mother's home.  Witt eventually met with mother, but mother would not cooperate or discuss the underlying complaints.  After his removal, Zefrin told Witt he was afraid of his mother and did not wish to visit with her.  Within weeks of Zefrin's removal, Witt noticed a dramatic and positive change in Zefrin's physical appearance and mental attitude.

Zefrin described conditions in his mother's home before his removal.  He recalled a lack of heat and hot water at times and told the trial court that he and his sister were required to do most of the household chores.  Mother home-schooled Zefrin for four and one-half years;, however, Zefrin revealed he did not spend much time on schoolwork.  At times, mother said she hated Zefrin and expressed her wish that he and his sister would "pack [thei]r bags and leave" and live with someone else.  Zefrin related how mother, depending on her mood, would hit him with her hand, with a spoon, and with a "weed whacker."

LDSS records confirmed that CPS workers telephoned mother, made home visits and offered parenting classes, counseling, transportation, and psychological assessments.  Mother did not return telephone calls, follow up on approved services, or execute releases so LDSS could obtain information.  In contrast, Zefrin's father and stepmother have been cooperative with LDSS.

Pamela Lygon, Zefrin's counselor, described Zefrin as "[h]esitant" and "withdrawn."  She attempted to:  (1) assess

-

Zefrin's level of depression and possible anger; (2) determine the extent of his neglect; (3) address his social isolation and its impact on peer interaction; and (4) determine if he could perform in a public school setting since he had not attended public school for several years. Lygon found that Zefrin suffered from depression and had "suicide ideology." The neglect and isolation under mother's care caused him to be distrustful and unable to express his feelings, so Lygon attempted to bond with him and gain his trust. Zefrin related how he and his sister did most of the household chores and "were pretty much on their own." Mother did not provide needed comfort and support. After six months of counseling, Zefrin's suicidal ideations subsided. Lygon opined that Zefrin does not desire to visit with his mother because he has accumulated a great deal of anger and negative feelings that he has yet to process and resolve. Lygon further opined that it would be detrimental to Zefrin if he were to be forced to visit his mother before he is better prepared emotionally. Zefrin enjoys living with his father. Father has been cooperative and supportive.

Dr. James Anderson, a clinical psychologist, evaluated mother and Zefrin. Mother scored in the low average range on cognitive/intellectual tests. Emotionally, she is suspicious, mistrustful, has difficulty dealing with anger, and externalizes blame. Dr. Anderson opined that mother is emotionally unstable

-

and "shows limited understanding of child development and principles of parenting, very limited insight and ability to appreciate her children's feelings, and decision-making that is so ineffective and inappropriate at times that [it] may endanger the health and well-being of her children."  Dr. Anderson did not feel that mother could "improve her level of personality functioning substantially" or her parenting abilities.

Zefrin tested average in intelligence, but suffered from "clinically significant depression" and "a possible learning or information processing problem."  Zefrin "verbalize[d]" to Dr. Anderson "a desire not to return to live with his mother." Dr. Anderson recommended "a nurturing home environment where [Zefrin] feels safe, where expectations are realistic, explicit, and consistently reinforced, and there is always someone supportive to whom he can turn for guidance and reassurance."

Father has maintained continuous contact with his son since his birth.  He visited him on Christmas and birthdays, which was the only visitation mother allowed.[3]  He described his interaction with Zefrin since obtaining temporary custody, his plans for working with his son and his desire to obtain

---

[3] Although father regularly paid $350 per month in child support for Zefrin, he acquiesced in mother's limitations on visitation.  He indicated that he did not push harder to extend visitation because of the distance between Tennessee and Lynchburg and because he "was under the assumption that [mother] was doing a pretty good job."

permanent custody and provide Zefrin with a secure and stable home.

Gary Coates, Zefrin's guardian ad litem, found Zefrin to be credible and recommended that Zefrin remain with his father.

The Department of Children's Services (DCS) for Carter County, Tennessee performed a home evaluation of father. Father's home is large and easily accommodates Zefrin. DCS felt that father and his wife could provide a "stable and loving home for Zefrin" and recommended "that Zefrin be placed with his father, Mr. Phil Eyster in Tennessee."

### Issue I: Sufficient Evidence of Abuse

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). The trial court's judgment, "when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

Code § 16.1-228(1) and (2) defines an "abused or neglected child" as any child:

> Whose parent . . . responsible for his care
> . . . creates or inflicts, threatens to
> create or inflict, or allows to be created
> or inflicted upon such child a physical or
> mental injury by other than accidental
> means, or creates a substantial risk of

-

death, disfigurement or impairment of bodily or mental functions;

Whose parents or other person responsible for his care neglects or refuses to provide care necessary for his health.

The record contains credible evidence that mother inflicted physical and mental abuse on Zefrin. She refused to allow Zefrin to attend a public school, requiring him instead to stay at home and essentially home-school himself. Mother failed to provide a safe, comfortable environment in which Zefrin could thrive mentally or physically. Heat and hot water were sometimes unavailable. Moreover, mother provided Zefrin with no social activities. Those deprivations, in conjunction with mother's physical and mental abuse, greatly contributed to Zefrin's depression, alienation, hostility, confusion and inability to socialize. Accordingly, the trial court's finding of abuse and neglect was not plainly wrong or without evidence to support it.

## Issue II: Awarding Custody to Father

Mother framed the issue as: "Whether the trial court erred in granting custody of Zefrin to his father, Phil Eyster."[4]

---

[4] In her argument on brief, mother contends the trial court "did not consider each of the factors enumerated in Section 20-124.3 of the Code." She cites pages 474 through 476 of the appendix as the place in the record she preserved this issue for appeal.
    "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Mother never challenged whether the trial court

-

As to mother's argument that the trial court erred in awarding custody to father, mother's attorney made the following statement in his closing argument:

> With respect to custody, I think, just from listening to the Court's questions and just the posture of this case, I think – and my client may not like to hear me say it, but I think that, after two years, it would be difficult at this point to return custody of a child.

Later, the attorney added:

> So, in summary, what we're asking the Court to do is to look at the evidence with respect to the abuse and neglect, and dismiss it, because I don't think they've met their burden and I don't know why we're here on it anyway.
>
> With respect to custody of Zefrin, the Court has heard the evidence. We, obviously, will abide by any court order with regard to the custody and visitation.

A party should not be permitted to "approbate and reprobate, by ascribing error to an act by the trial court that comported with [that party's] representations." Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000). See also Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988) (no litigant will be permitted to approbate and

---

considered all the Code § 20-124.3 factors at the September 2002 hearing, nor did she include such an objection when, on January 7, 2003, she signed the final order "Seen & Objected to."
    Accordingly, Rule 5A:18 bars our consideration of this question on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

-

reprobate, that is, to invite error and then take advantage of the situation created by his own wrong).

Mother conceded through counsel that it would be difficult to place Zefrin in her custody after he had spent two years in the custody of his father, and she said she would abide by whatever decision the trial court made as to custody and visitation.  In conceding that she likely would not prevail as to custody, mother led the trial court to believe that custody was not an issue.  As such, mother cannot contest that decision on appeal.  See id.

### Issue III:  Approving Foster Care Plan

On October 17, 2001, LDSS submitted a foster care service plan review with a program goal of "Return Home (Change of Custody)."  LDSS noted that it "is unable to report whether [mother] has completed parenting or . . . psychological evaluation because she has declined to sign a[ny] release[s]." LDSS described father as "caring" and "genuinely interested in providing a nurturing home for his son."  In contrast, father "has handled Zefrin's inappropriate behaviors appropriately and has shown a strong desire to help his son succeed."  The LDSS worker recommended that Zefrin remain in father's custody.

Mother abused and neglected Zefrin, whereas father has demonstrated a strong desire to support and care for his son, whom he loves very much.  Mother did not cooperate with LDSS, refused to acknowledge any parenting problems and failed to take

-

advantage of services provided.  A home study showed that father had the means and desire to care for Zefrin, and it recommended custody of Zefrin be placed with father.  Because the record supports the trial court's decision, we cannot say the trial court erred in approving the foster care plan.

Accordingly, the decision of the trial court is affirmed.

Affirmed.