UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner


BRIAN HALE, S/K/A
  CHARLES BRIAN HALE

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0510-15-3                           PER CURIAM
                                                      MARCH 29, 2016

RUSSELL COUNTY
  DEPARTMENT OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF RUSSELL COUNTY
                            Michael Moore, Judge

           (John E. Stanley, on brief), for appellant.

           (Robert J. Briemann; Street Law Firm, LLP, on brief), for appellee.

           (Helen E. Phillips; A. Ross Phillips; Allen & Newman, PLLC, on
           brief), Guardian *ad litem* for the minor child.


        Charles Brian Hale (father) appeals the order terminating his parental rights to his child.

Father argues that the trial court erred by (1) allowing the Russell County Department of Social

Services (the Department) to submit the "entire history of the child" to the court; and (2) finding that

the evidence was sufficient to terminate father's parental rights. Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily

affirm the decision of the trial court.[1] See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On February 19, 2016, the Department filed a motion to dismiss. On March 7, 2016, father filed a response. Upon consideration thereof, the motion to dismiss is denied.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Father and Jessica Fields (mother) are the biological parents of a child who was born in 2006. The Department first became involved with the family in 2009; however, the child had earlier been removed from the home by social services departments in surrounding counties. Prior to 2014, the child had been placed in foster care four times and was the subject of eight child protective services investigations. The parents have a history of substance abuse and domestic violence.

On February 8, 2014, father and mother were charged with malicious wounding and conspiracy to maliciously wound after getting into a fight with father's sister. The child was at the paternal grandmother's house at the time. The paternal grandmother told the Department that she could not keep the child, so the child was placed in foster care for the fifth time.

On March 7, 2014, the Russell County Juvenile and Domestic Relations District Court (the JDR court) made a finding of abuse and neglect.

In March 2014, both parents were released from jail on bond pending their criminal trials. The Department offered services to the parents, but they refused to participate because they had previously participated in services when the child was in foster care before this last incident. The Department informed father that before the child would be returned home, father had to complete twelve parenting classes and twelve anger management classes. He also had to attend a Parenting and Family Values Group and submit to random drug screens. The Department informed mother that before the child would be returned home, mother had to complete twelve anger management classes and the Parenting and Family Values Group. She also had to submit

to random drug screens. On three occasions, the Department arranged for parenting and anger management classes, but neither parent appeared at the appointments.

In July 2014, father and mother were arrested for violating the conditions of their bond. Father failed two drug screens, and mother failed to appear at three scheduled appointments. In September 2014, mother pled guilty to unlawful wounding and was released from jail after having been given credit for time served. In November 2014, father pled guilty to unlawful wounding and was released from jail after having been given credit for time served.

The Department investigated several relatives for placement. As noted above, the paternal grandmother indicated that she was unable to care for the child. The Department placed the child with a maternal great-aunt, but after one week, the great-aunt returned the child to the Department for "personal problems in her life." The Department investigated another maternal relative, but due to her living arrangements, she could not be an approved placement.

On September 24, 2014, the Department filed a foster care plan with the goal of adoption and a petition to terminate parental rights. On October 17, 2014, the JDR court entered an order that disapproved of the plan. The Department appealed the JDR court order.

On November 18, 2014, the Department filed a motion to amend the petition in order to assert additional grounds for termination of parental rights. On December 1, 2014, the circuit court entered an agreed order that allowed the Department to file an amended petition, which it did.

On January 23, 2015, the parties presented their evidence and argument. At the time of the hearing, father still had not started any of the Department's required classes, and mother had started, but not completed, any of the classes. Father admitted to being incarcerated approximately five times for a total of four or five years since the child was born. The trial court noted the parents have an "unstable lifestyle, multiple residences, multiple incarcerations,

particularly for Mr. Hale, [and] employment has been an issue." At the conclusion of the hearing, the trial court held that it was in the child's best interests to terminate mother's and father's parental rights pursuant to Code § 16.1-283(C)(2). It also approved the foster care plan with the goal of adoption. This appeal followed.[2]

ANALYSIS

*Assignment of error #1*

Father argues that the trial court erred in allowing the Department "to enter the child's entire history . . . in the hearing." Father asserts that the trial court "gave great weight" to events that occurred prior to February 2014, instead of focusing on what happened after the child entered foster care. He contends the trial court should have reviewed only the events from the time that the child entered foster care in February 2014 until the final hearing in January 2015 because his parental rights were terminated pursuant to Code § 16.1-283(C)(2). Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

In November 2014, the Department sought leave of court to file an amended petition with additional grounds and facts. On December 1, 2014, the trial court entered an agreed order allowing the filing of the amended petition. Father's attorney signed the order as "Seen and agreed." The amended petition included numerous events that occurred prior to the child's removal in February 2014.

---

[2] Mother also appealed the trial court's decision to terminate her parental rights. See Fields v. Russell Cty. Dep't of Soc. Servs., Record No. 0526-15-3.

Father waived his objection when his attorney signed the December 1, 2014 order "Seen and agreed." A party is not permitted to "approbate and reprobate, by ascribing error to an act by the trial court that comported with his representations." Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000) (citation omitted). See also Rule 5A:18. Therefore, the Court will not consider father's first assignment of error.

*Assignment of error #2*

Father argues that the trial court erred in terminating his parental rights pursuant to Code § 16.1-283(C)(2). He contends he was incarcerated part of the time the child was in foster care, and at the time of the final hearing, he had been out of jail for a short time and unable to complete the required services.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Contrary to father's arguments, the trial court could consider father's period of incarceration.

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

> [W]e find no merit in [father's] contention on appeal that Code § 16.1-283(C)(2) required the Department to offer him services during his incarceration. It would be patently unreasonable to

> require the Department, under such circumstances, to continue to offer services. . . . Thus as long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child.

Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163-64, 590 S.E.2d 575, 583 (2004).

From the time of the child's removal in February 2014 until March 2014, father was incarcerated until he was released on bail. After father was released from jail, the Department informed father of the required services he had to complete. Father told the social worker that he did not need to participate in services because he had done so previously when the child was in foster care. Despite the Department setting several appointments for parenting classes and anger management classes, father did not appear for his scheduled appointments. Father was not incarcerated during this time period.

Father violated a condition of his bond by failing two drug screens. He was arrested in July 2014 and remained incarcerated until November 2014. After he was released, father did not start any of the required classes.

The trial court also was concerned about father's stability. Father had resided in numerous residences since the child's birth. There was evidence that father and mother acquired a new residence a few days before the hearing. They had not told the Department about the house, so an inspection had not been done.

At the final hearing, the trial court recognized the Department's extensive involvement with the family. This was the child's fifth time being placed in foster care. Since the child's removal in February 2014, father had not remedied any of the conditions that led to the child being placed in, and remaining in, foster care. The trial court stated that it was not "fair to [the child] to require her to wait any longer for these parents to get their act together." See Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990) ("It is

clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities.").

Based on the circumstances, the trial court did not err in terminating father's parental rights.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.