COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Russell and Senior Judge Clements
Argued at Richmond, Virginia

RAHUL KISHORE CHAUDHRY

MEMORANDUM OPINION[*] BY
v.        Record No. 0869-19-4        JUDGE MARY GRACE O'BRIEN
JANUARY 28, 2020

LISA JUDITH CHAUDHRY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Thomas P. Mann, Judge

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellant.

No brief or argument for appellee.

Rahul Kishore Chaudhry ("husband") appeals certain provisions of a final order granting a

divorce to Lisa Judith Chaudhry ("wife"). He asserts eleven assignments of error primarily relating

to the court's spousal and child support awards. In his first seven assignments of error, husband

challenges, for various reasons, the court's retroactive support awards. In his eighth and ninth

assignments of error, he contends that the court abused its discretion in the "overall awards" of

spousal support, child support, arrearage payments, and attorney's fees. Finally, husband argues

that the court erred in denying his motion to reconsider, and he requests attorney's fees for his

appeal.

BACKGROUND

Husband and wife married May 14, 1989, when they were ages eighteen and sixteen,

respectively. Between 1989 and 2012, the parties had six children. When they separated on May

13, 2017, three children were still minors.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Wife filed for divorce on October 2, 2017, on the grounds of cruelty, constructive desertion, or in the alternative, a one-year separation. She requested equitable distribution, custody of the minor children, child and spousal support both *pendente lite* and permanently, and attorney's fees. Husband filed a counterclaim for divorce on the same grounds as wife. He also asked the court to determine equitable distribution and custody, and he sought spousal and child support both *pendente lite* and permanently. The court subsequently entered a consent order granting the parties joint legal custody of the minor children, with wife having primary physical custody. The order did not address spousal or child support.

A two-day trial began March 27, 2019. The court took the case under advisement and reconvened on April 5, 2019, to issue its ruling and hear argument on attorneys' fees. The court found that wife's request for a divorce on the ground of cruelty "was a close call." Despite finding her testimony of a sexual assault by husband credible, the court concluded that husband "was attempting, in a cloddish manner, to create sexual desire on the part of [wife]" during the incident. The court granted wife a divorce on the grounds of a one-year separation pursuant to Code § 20-91(9)(a).

In its ruling, the court made significant credibility determinations and findings of fact. Additionally, certain facts were uncontroverted. Throughout the marriage, husband was employed at his parents' business, Temporary Help, Inc. ("THI"). He also worked as a licensed realtor. During the parties' marriage, husband's parents provided them with substantial financial assistance.

Wife, who began employment with THI when she was fifteen, stopped working when the couple's first child was born and thereafter only returned to the job sporadically. She testified that although she remained on the payroll until June 2018, with tax returns reflecting a salary of $91,000 in 2017, and $45,500 in 2018, the last time she performed any work for THI was approximately ten years earlier. She explained that her paychecks were actually portions of husband's salary, directed

to her to avoid the appearance that husband was making more money than his father. Husband disputed that claim. Wife testified that during the pendency of the divorce, husband and his father told her that to keep receiving THI checks, she would have to resume working, and she refused. THI eliminated her salary in June 2018.

The monthly mortgage payment for the parties' primary residence was approximately $7000. At various times during the parties' separation, the mortgage was not paid. The parties also owned a townhouse that they rented for investment purposes. The townhouse mortgage fell into arrears, and in January 2018, the parties sold the property and received $66,000 in net proceeds. From that sum, they paid $43,000 toward the past-due mortgage on their primary residence. The remaining $23,000 went into a joint account and covered subsequent mortgage payments and other bills. Additionally, wife testified that after the parties separated, she received a $40,000 insurance check for flood damage to the primary residence. A portion of the insurance proceeds paid for repairs; the rest went into a joint account, and wife used it to support herself and the children.

Unravelling the parties' complete financial situation proved a challenge for the court. Husband testified that when the parties separated, his annual gross income was $149,150. He stated that his income declined in 2018 and 2019, which he and his father attributed to a downturn in THI's business. However, the parties' son, who manages operations and payroll for THI, testified that at the time of trial in March 2019, the company was performing "about the same" financially as it had been in 2017.

After determining equitable distribution, the court reviewed the factors of Code § 20-107.1 and determined spousal support. The court found that during the marriage, husband made the majority of monetary contributions and wife made the majority of non-monetary contributions. It determined that "the lavish lifestyle enjoyed by this family was financed, to an unknowable extent, by [husband's] parents." The court found that wife was responsible for raising the parties' six

children and also noted that husband's statement that he "cooked all or most of the meals" was "a lie" and that "these types of absolutist and grandiose statements permeate [husband's] testimony. He either has a tenuous grasp on reality, or he has a bruised friendship with the truth in general."

The court stated that despite a thorough review of the evidence, "it's difficult to pin down what [husband's] job actually is or what he does all day." The court explained,

> This is a big part of the evidentiary difficulty in this case. [Husband] has kept much of the financial picture away from [wife's] view during the past [twenty-nine] years, instructing her to stay in her homemaker lane. [Husband] was also pretty good at painting a cloudy evidentiary picture. . . . [T]he [c]ourt's view of his financial position is not better than [wife's] view.

Regarding the circumstances leading to the marriage's dissolution, the court found that although wife was "not blameless," husband could be "angry, emotionally abusive, distant, mercurial, and . . . physically abusive." The court also noted a family dynamic of using money for control:

> [Husband's] father exerts financial dominance over [husband]. [Husband], in turn, financially dominates [wife], to such an extent that he weaponizes money to manipulate [wife] into toeing his desired line. [Wife] was kept in the dark about their financial status. She had and has almost nothing of her own . . . . The [c]ourt finds this was done intentionally by [husband].

The court further remarked that "[t]he financial situation and the source of the family's finances [were] hard to pin down." The court found that husband purposefully lowered his income and lied about THI's financial strength:

> [Husband] voluntarily, surreptitiously, and in deceptive fashion, either on his own or in concert with [his] father, artificially lowered his income during the course of the separation. . . . [Husband's] and his father's description of the relative health of the family business [that] caused a decrease in [husband's] salary was just false. . . . [W]hile [husband] and his father lamented [THI's] loss of certain contracts, [the parties' son] indicated this was not a watershed event, as they win and lose contracts all the time.

The court noted that other than wife and husband's mother, "no one saw a decrease in salary at THI, despite [husband's] contention that the company was struggling due to lost contracts." The court also considered that husband's father paid himself and other family members "healthy salaries and huge end-of-year bonuses."

Further, the court disbelieved testimony from husband and his father that wife lost her THI salary in June 2018 because she would not work. Instead, the court found that husband sought to eliminate her salary during the pendency of the divorce proceedings as part of his "*modus operandi* of using money and threats of poverty and homelessness to keep [wife] enthralled to him." The court found it irrelevant that wife declined to resume work at THI after filing for divorce: "No person under these circumstances would voluntarily subject themselves to the whims of this [h]usband and his father."

The court noted that wife "has no education, no assets, no vehicle, and once the house is sold, no home, and she has physical custody of the three [minor] children. . . . To say that her situation is perilous is an understatement."

The court also found that husband made economic threats to wife. The court believed wife's testimony that on several occasions, husband told her "if she drops the divorce and comes back to him, he would immediately bring all liabilities current," an amount "between $80- and $100,000." Therefore, the court inferred that husband had access to such funds, stating that "[husband] has money, a lot of it." The court found that husband's 2017 salary of $149,150 "is either what he is actually earning or what he should and can be earning" and imputed that salary as his current annual income.

In determining an appropriate amount of spousal support, the court determined that wife "is unskilled, primarily being out of the workforce, other than some work at THI, for [thirty] years

- 5 -

while she was raising six children." It concluded that her "ability to obtain reasonable employment is doubtful in the near term" and imputed an annual $25,000 salary to her.

The court ordered spousal support in the amount of $6250 per month "retroactive to the date of filing of the [c]omplaint for [d]ivorce on October 2, 2017." Using the parties' imputed incomes, the court ordered guideline child support of $1009 per month, also retroactive to October 2, 2017.

The court deferred the issue of attorneys' fees to a May 6, 2019 hearing and advised that it would also address whether husband was entitled to any credits for child and spousal support arrearages at that time. However, the court specifically noted that it was "not going to take any additional evidence on credits" but only address whether "based upon the evidence [already in the record,] there should be a credit."

On May 6, 2019, husband's counsel acknowledged that "[t]here are no credits in the evidence" and explained he made a strategic decision "to get [husband] off the stand as fast as possible," because counsel sensed that the court "had grown worrisome of [husband] testifying way beyond the scope of the question[s]." Husband's counsel asked the court to reopen the case to receive additional evidence, but the court denied the request.

Husband also filed a motion for the court to reconsider its determination of husband's imputed income, wife's imputed income, support calculations, and retroactive support. The court agreed to review the motion and rule without a hearing.

In a subsequent letter opinion, the court found that no credits had been established for either child or spousal support arrearages. The court granted wife's request for $30,000 in attorney's fees, payable in installments, and ordered husband to pay $1250 per month toward child support arrearages and $1000 per month toward spousal support arrearages. Husband's overall obligation to wife totaled $11,276 per month. The court also denied the motion to reconsider.

## ANALYSIS

### A. Standard of Review

Husband primarily challenges the court's decisions regarding spousal and child support. This Court reviews an award of spousal support for an abuse of discretion. Moreno v. Moreno, 24 Va. App. 190, 194-95 (1997). A court "necessarily abuse[d its] discretion if [it] based [its] ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Bomar v. Bomar, 45 Va. App. 229, 236 (2005) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)). Decisions regarding spousal support "will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Floyd v. Floyd, 17 Va. App. 222, 224 (1993). "On appeal, the trial court's findings must be accorded great deference." Moreno, 24 Va. App. at 195. "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses." Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)).

Likewise, "[t]he determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." Oley v. Branch, 63 Va. App. 681, 699-700 (2014). See also Vissicchio v. Vissicchio, 27 Va. App. 240, 253 (1998). To the extent husband's assignments of error raise issues of statutory construction, we review those decisions *de novo*. See Harrell v. Harrell, 272 Va. 652, 656 (2006).

### B. Child and spousal support retroactive to October 2, 2017

#### 1. Retroactive child support

Husband asserts that the court erred in granting child support retroactive to October 2, 2017, because wife never sought *pendente lite* support. He also argues that the retroactive award, reflecting the guidelines using her imputed annual income of $25,000, ignores her actual earnings of $91,000 in 2017 and $45,500 in 2018.

Code § 20-108.1(B) addresses child support payments. The statute requires that "[l]iability for [child] support *shall be determined retroactively* for the period measured from the date that the proceeding was commenced by the filing of an action with any court provided the complainant exercised due diligence in the service of the respondent." Code § 20-108.1(B) (emphasis added). Stated otherwise, a parent's child support obligation begins when a pleading is filed requesting child support. See Cirrito v. Cirrito, 44 Va. App. 287, 309-10 (2004) (noting that "it is apparent the legislature intended that 'shall' [in Code § 20-108.1(B)] be mandatory" and "[t]here is no latitude under the statute").

As an initial matter, husband is incorrect that wife never requested temporary child support. In her complaint for divorce, wife expressly sought "child and spousal support, both *pendente lite* and permanently at the conclusion of this case." Her pleading put the issue of child support, both temporary and final, before the court. See Boyd v. Boyd, 2 Va. App. 16, 19 (1986) (stating that the power to award support "remains dependent upon the pleadings having raised the issue").

Husband's assertion that wife waived her right to retroactive child support by not seeking a *pendente lite* support order is also without merit. The statute contains no requirement for a *pendente lite* order or hearing to establish a retroactive obligation. Code § 20-108.1(B) (requiring that child support orders be retroactive to the date of filing). See Asgari v. Asgari, 33 Va. App. 393, 399-400 (2000) (rejecting argument that failure to pursue motion for *pendente lite* relief constituted abandonment of child support claim and affirming retroactive award under Code § 20-108.1(B)). See also Cirrito, 44 Va. App. at 307-10 (holding that the court erred in not making child support retroactive to the date of filing the original complaint for divorce, even where there was no prior *pendente lite* hearing, only an agreement by husband to maintain the family's *status quo*).

"The starting point for a trial court in determining the monthly child support obligation of a party is the amount as computed by the schedule found in Code § 20-108.2." Tidwell v. Late, 67

Va. App. 668, 679 (2017) (quoting Richardson v. Richardson, 12 Va. App. 18, 21 (1991)). "The amount of child support under the child support guidelines must be based on the parents' actual gross income." Id. (quoting Niblett v. Niblett, 65 Va. App. 616, 625 (2015)). A court errs if it does "not first calculate a presumptive support amount based on current year income, and then, *after that*, explicitly analyze whether higher income in prior years manifested a greater earning capacity that rendered the presumptive award inappropriate or unjust." Id. at 680-81.

Husband argues that the court erred by using the permanent child support award as the basis for the retroactive award. He contends that the court violated the requirements of Tidwell by ignoring evidence of what wife actually earned during the retroactive period and deviating from the guidelines without explanation.

The issue of "income is a question of fact, and 'the judgment of the court on questions of fact is entitled to great weight and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Patel v. Patel, 61 Va. App. 714, 727 (2013) (quoting Smith v. Bd. of Supervisors, 201 Va. 87, 91 (1959)). At the time of the March 2019 trial, THI had eliminated wife's salary; her actual income was $0. The court imputed a $25,000 yearly salary to wife. See Code § 20-108.1(B)(3) (allowing court to impute income to party who is voluntarily unemployed or under-employed). Wife testified that she had not worked for THI in over ten years and understood her purported income to be portions of husband's salary. The court found her testimony credible.

Further, although wife's 2017 and 2018 tax returns indicate that THI paid her $91,000 and $45,500, respectively, in those years, the court found that wife had no assets. The court determined that wife "was kept in the dark about [the parties'] financial status" and "has almost nothing of her own."

We disagree with husband's contention that under Tidwell, the court erred by not explaining why it "deviated" from a presumptive amount of support calculated according to wife's "actual

earnings" during the retroactive period, as evidenced in her tax returns. Unlike Tidwell, the court concluded that wife's tax returns in 2017 and 2018 did not accurately reflect her salary in those years. Based on the record, including evidence of wife's earning capacity, the court was not plainly wrong in imputing income of only $25,000 to wife. Additionally, given the statutory mandate of Code § 20-108.1(B) to make a child support order retroactive to the date of filing, and the court's credibility determinations, it did not err in using wife's imputed salary of $25,000 as the basis for child support retroactive to October 2, 2017.

2. Retroactive spousal support

Husband also challenges the court's decision awarding wife spousal support retroactive to October 2, 2017. "When a court awards spousal support based upon due consideration of the factors enumerated in Code § 20-107.1, as shown by the evidence, its determination 'will not be disturbed except for a clear abuse of discretion.'" Dodge v. Dodge, 2 Va. App. 238, 246 (1986) (quoting Thomasson v. Thomasson, 225 Va. 394, 398 (1983)).

Husband first contends that wife is not entitled to retroactive spousal support because she never sought *pendente lite* relief. Again, husband is incorrect. Wife's complaint for divorce expressly requested "child and spousal support, both *pendente lite* and permanently." By raising this issue in her initial pleading, wife gave notice of her intention to seek support for periods including the pendency of the action. See Boyd, 2 Va. App. at 19. Although the parties agreed to a custody order that made no provision for *pendente lite* support, wife did not waive her right to either spousal or child support dating back to the commencement of the lawsuit. See Asgari, 33 Va. App. at 399-400.

The court had discretion to make the spousal support award retroactive to the date of filing. See Code § 20-107.1(A) (providing that upon entry of a divorce, "the court may make such further decree as it shall deem expedient concerning the maintenance and support of the spouses").

- 10 -

Appellate courts repeatedly have held "that the time permanent [spousal support] shall commence is within the sound discretion of the court and *may* be made effective as of the date of the commencement of the suit." Young v. Young, 215 Va. 125, 126 (1974) (per curiam) (quoting Lawrence v. Lawrence, 212 Va. 44, 47 (1971)). See also Konefal v. Konefal, 18 Va. App. 612, 614 (1994) ("[T]he trial court had discretion to enter the award of spousal support effective any time after the date of the commencement of the suit."); Weizenbaum v. Weizenbaum, 12 Va. App. 899, 904 (1991) ("A court can order periodic spousal support payments retroactively to the date of filing the pleading requesting such relief.").

Husband contends that the court abused its discretion by ordering retroactive spousal support because wife did not establish a need for support while the divorce was pending. He relies on the tax returns reflecting wife's purported 2017 and 2018 earnings, as well as evidence concerning the proceeds from the sale of the townhouse and the flood insurance check. However, the court based its decision on specific factual findings regarding husband's use of money to exert power over wife and his lack of candor with the court.

The court found that husband limited wife's earning capacity by keeping her "in her homemaker lane" for thirty years. It concluded that because wife had been out of the job market while raising the couple's six children, she had a limited ability to obtain reasonable employment in the near term. The court also found that the 2017 and 2018 tax returns did not accurately reflect wife's income: in fact, she had not worked for THI in over ten years. The court accepted wife's testimony that her "income" was actually a portion of husband's salary. Because credible evidence in the record supports these findings, we will not disturb them on appeal. See Moreno, 24 Va. App. at 194-95.

Husband's contention that the court erred by failing to consider the proceeds from the sale of the rental property and the flood insurance check is likewise without merit. The court determined

- 11 -

that the funds were in a joint account and were used for past-due mortgage payments and living expenses. Although the "living expenses" were not quantified at trial, the court specifically found that husband intentionally "paint[ed] a cloudy evidentiary picture for purposes of this case." The court had the discretion to discredit husband's evidence that wife had no need or expenses during the retroactive period. Its findings were not plainly wrong or without evidentiary support. See Moreno, 24 Va. App. at 194-95. Accordingly, we find no abuse of discretion by the court in ordering spousal support retroactive to the date wife filed her complaint for divorce.

Finally, to the extent husband argues that the court failed to provide him with a credit for any expenses that he and his parents paid for wife's benefit during the retroactive period, he has waived that argument. At the post-trial hearing on May 6, 2019, husband conceded that "[t]here are no credits in the evidence" due to counsel's strategic decision to "get [husband] off the stand as fast as possible." We have stated that "[n]o litigant . . . will be permitted to approbate and reprobate – to invite error . . . and then to take advantage of the situation created by his own wrong." Manns v. Commonwealth, 13 Va. App. 677, 680 (1992) (quoting Fisher v. Commonwealth, 236 Va. 403, 417 (1988)). Husband, having conceded to the trial court that no credits were in evidence, should not be allowed to assume an inconsistent position on appeal. Id. at 679. See also Asgari, 33 Va. App. at 403 ("Husband will not be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with his representations."). Accordingly, we will not consider this argument.

### C. "Overall awards" in relation to husband's income

Husband also challenges the "overall awards" of spousal support, child support, arrearage payments, and attorney's fees on the grounds that they leave him without disposable income and "in a position of default immediately." Husband contends that his net monthly income after taxes is $9132 and his court-ordered payments total $11,276 per month. However, the record contains ample evidence that in addition to his imputed income, husband has other financial resources to

make his court-ordered payments. The court did not believe that THI was suffering financially and specifically noted that husband and his father "us[e] various corporations, entities and properties . . . [to] manipulate and move funds[.] . . . They hide money." The court also alluded to husband's offer to "immediately bring all liabilities current," an amount "between $80- and $100,000," if wife withdrew her complaint for divorce and reconciled with him. The court concluded that "[husband] has money, a lot of it." These findings are not plainly wrong or without evidentiary support, and therefore we accord them great deference on appeal. See Moreno, 24 Va. App. at 195.

The court's detailed findings, supported by specific facts, distinguish this case from Goetz v. Goetz, 7 Va. App. 50 (1988), and Donnell v. Donnell, 20 Va. App. 37 (1995), relied on by husband. In Goetz, we held that the court abused its discretion when it based a husband's income on an unsubstantiated belief that he was earning unreported income from "side jobs." Goetz, 7 Va. App. at 53-54. Likewise, in Donnell, we found a court's ruling on support in error where there was no evidentiary basis to impute income to a husband. Donnell, 20 Va. App. at 41. Here, husband does not contest the amount of income imputed to him but challenges the overall award.

Spousal and child support awards must be based on legal principles and must be "fair and just under all the circumstances of the case." Ray v. Ray, 4 Va. App. 509, 514 (1987) (quoting Klotz v. Klotz, 203 Va. 677, 680 (1962)). Given the court's findings of husband's dishonesty, financial control over wife, and access to significant funds, we cannot say that the court abused its discretion in ordering the overall award.

### D. Motion to reconsider and request for attorney's fees

Husband argues that the court erred by denying his motion to reconsider the issues of imputed income, support calculations, and retroactive support. However, in his motion to

reconsider, he asserted the same arguments that he makes on appeal. Because we do not find them persuasive, we likewise conclude that the court properly denied husband's motion to reconsider.

Finally, we find that husband's request for attorney's fees under Rule 5A:30 is not well taken. Rule 5A:30 provides that in certain domestic relations cases where attorney's fees are recoverable, this Court "may award" fees or "remand the issue to the circuit court . . . for a determination thereof." Rule 5A:30(b)(1), (2). The decision to award fees is discretionary. See id.; Friedman v. Smith, 68 Va. App. 529, 545 (2018). Although Rule 5A:30 does not limit the Court to considering "whether a party's position on an issue was frivolous or lacked substantial merit," it authorizes us to consider "all the equities of the case." Rule 5A:30(b)(3). Additionally, the Court must consider whether the requesting party prevailed. Brandau v. Brandau, 52 Va. App. 632, 642 (2008) ("We summarily reject husband's request, given that he did not prevail on either of his two assertions on appeal and necessarily cannot be a candidate for an award of appellate fees."). Here, the court found that husband was not a credible witness, openly lied, and purposefully "paint[ed] a cloudy evidentiary picture" of the parties' finances. The record supports these findings. Accordingly, based on the equities of the case and husband's failure to prevail on any issue presented, we deny his request for appellate attorney's fees.

## CONCLUSION

We find the court did not err in awarding wife child and spousal support retroactive to the date she filed her complaint for divorce. Additionally, we find the court did not abuse its discretion in its overall awards of child support, spousal support, arrearage payments, and payments of attorney's fees. Finally, the court did not err in denying husband's motion to reconsider, and we deny his request for attorney's fees incurred in this appeal. Therefore, we affirm the rulings of the court.

Affirmed.